UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT ALEX DELEON,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN SANTIAGO,<br><br>        Defendant. | Case No.  1:24-cv-00234-KES-EPG (PC)<br><br>ORDER OVERRULING IN PART DEFENDANT SANTIAGO'S OBJECTIONS TO PRODUCTION OF DOCUMENTS BASED ON THE OFFICIAL INFORMATION PRIVILEGE<br><br>(ECF No. 51) |

       Plaintiff Vincent Alex DeLeon is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on February 26, 2024.  (ECF No. 1).  This case proceeds on Plaintiff's Eighth Amendment excessive force claim against defendant Steven Santiago, a correctional officer at California Substance Abuse Treatment Facility (CSATF).  (ECF. No. 14).

       Now before the Court are Defendant Santiago's objections to the production of certain documents filed on October 3, 2025.  (ECF No. 51).  Santiago filed a Notice of Lodging of Documents for In Camera Review (ECF No. 53) on October 30, 2025.  Over 60 days have passed since Santiago filed his objections, and Plaintiff has not filed a response.

       Having reviewed the documents, audio recordings, and video footage submitted for *in camera* review, the Court finds that Santiago's objections to production are overruled in part.

///

///

1

**I.     BACKGROUND**

Plaintiff's First Amended Complaint alleges that, on July 20, 2023, around 9:35 a.m., CSATF prison D-4 was being searched. (ECF No. 11). Correctional officer defendant Steven Santiago came to Plaintiff's cell door, kicked it, and told Plaintiff to wake up. Santiago had Plaintiff "stripped out" and had Plaintiff turn around to have Plaintiff's back towards Santiago. Plaintiff was placed in flex cuffs and his door was opened. Santiago told Plaintiff to do something. Plaintiff complied, then he turned around to be escorted out. Next thing Plaintiff knew, he was being lifted off the ground like he was being tackled. Due to his hands being bound behind his back in flex cuffs, his head was slammed onto his bottom bunk, and he lost consciousness.

Following screening, this case proceeds on Plaintiff's claim of excessive force against defendant Steven Santiago, a correctional officer at CSATF. (ECF No. 14, at p. 2).

The Court opened discovery on July 21, 2025. (ECF No. 45). To secure the just, speedy, and inexpensive disposition of this action, the Court directed the parties to exchange certain documents, including "[w]itness statements and evidence that were generated from investigation(s) related to the event(s) at issue in the complaint, such as an investigation stemming from the processing of Plaintiff's grievance(s), if any." (*Id.*, at 2).

On October 3, 2025, Santiago filed a Notice of Compliance with the Court's Order for the Parties to Exchange Initial Documents and Objections to the Production of Certain Documents. (ECF No. 51). Santiago asserted objections under the official information privilege for the Administrative Investigation Reports and exhibits, Hiring Review and Closure Memoranda, audio-recorded interviews of Santiago and Lieutenant J. Ervin, and part, or all, of two body-worn camera videos. (*Id.*)

On October 30, 2025, Santiago filed a Notice of Lodging of Documents for in Camera Review. (ECF No. 53). Santiago also filed a privilege log and the Declaration of J. Barba, the litigation coordinator at CSATF in Corcoran, California, which describes these documents and recordings as being confidential under California Code of Regulations, Title 15, Section 3321. (ECF No. 52-1).

///

Defendant submitted the following documents and recordings for *in camera* review:

- AGO 145-298:  Allegation Investigation Unit (AIU) Internal Affairs, Administrative Investigation Report, Case No. C-AIU-SATF-7166-23, for Grievance No. 525712 and Exhibits;
- AGO 299-304:  Hiring Authority Review and Closure Memorandums for Investigation for AIU Case No. C-AIU-SATF-7166-23;
- AGO 305-462:  AIU Administrative Investigation Report, Case No. C-AIU-SATF-8200-23, for Grievance No. 439546 and Exhibits;
- AGO 463-268:  Hiring Authority Review and Closure Memorandums for Investigation for AIU Case No. C-AIU-SATF-7166-23;
- Audio-Recorded Interview of Defendant S. Santiago and Lieutenant J. Ervin for C-AIU-SATF-7166-23 and AIU Case No. C-AIU-SATF-8200-23;
- Body-Worn Camera Footage, "D 3 FLR 2 242414.g64x", first minute and eighteen seconds, timestamped 09:33:00 to 09:34:16; and
- Body-Worn Camera Footage, "D 4 CNTRL 242422.g64x."

The declaration by Barba claims the risk that such documents, including the investigation reports and exhibits, hiring reviews, and closure memoranda, could be given to other inmates, and that disclosure would jeopardize the security of the institution, reveal investigative techniques, and potentially impede future investigations.  (*Id.* at 3-4).  Barba argues that disclosure of the documents and audio-recorded interviews of CDCR staff, including Santiago, would inhibit future staff witnesses from freely providing information to investigators, impeding the ability of the CDCR to conduct accurate and reliable inquiries into staff misconduct.  (*Id.* at 5).

Barba makes specific arguments as to the production of two files of body-worn camera footage from the day of the incident.  (*Id.* at 6-7).  Specifically, a video file labeled "D 3 FLR 2 242414.g64x" was taken from the body-worn camera of a nonparty correctional officer.  (Id.) The greater part of the video shows the injured Plaintiff on the day of the incident.  However, the first minute and eighteen seconds (timestamped 09:33:00 to 09:34:16) of the video records an unidentified correctional officer instructing another inmate to undress for an unclothed body search.  (*Id.*)  The video records the inmate undressing and complying with the unclothed body

3

search process.  Barba objects to the production of this first minute and eighteen seconds and argues that the video footage should remain confidential to protect the inmate's privacy and to prevent undermining CSATF staff members' ability to conduct unclothed body searches within the prison.  (*Id.*)  Barba asserts that inmates may refuse to cooperate in unclothed body searches, fearing future release of the video to unknown parties.  (*Id.*)

Barba further objects to the production of a second video file labeled "D 4 CNTRL 242422.g64x."  (*Id.* at 7).  The file comes from the body-worn camera of a nonparty control booth officer on the day of the incident.  (*Id.*)  The footage captures the interior of the control booth in D4 Housing Unit at CSATF.  (*Id.*)  Barba argues that the video reveals "the control booth officer's line of sight and any potential blind spots from the control booth."  (*Id.*)  Barba also asserts that the "footage would also reveal what equipment the control booth officer has available and does not have available within the control booth."  (*Id.*)  Barba argues that producing the video file could allow Plaintiff, "or anyone he discloses this information to, …[to] use this information to more successfully violate prison rules or commit acts of violence within the housing unit while evading the control booth officer's line of sight."  (*Id.*)

Finally, Barba explains that the documents contain personnel information such as badge numbers, personnel (PERNR) numbers, and work email addresses and phone numbers for Santiago and other CSATF staff members.  (*Id.* at 5).  Barba argues that this information is protected from disclosure under state law.  (*Id.*)  Barba asserts that inmates in CDCR facilities are subject to intense pressure from other inmates, including prison gang members, to disclose private information they may learn about CDCR staff and may use force to obtain the information, endangering the security of the facility and the safety of other inmates and staff.  (*Id.* at 8).

Santiago certified that a copy of their Notice of Lodging of Documents for In Camera Review was mailed to Plaintiff on October 30, 2025, along with a copy of the privilege log and Barba declaration.  (ECF Nos. 52, 53).

## II.   LEGAL STANDARDS

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Questions of privilege in federal civil rights cases are governed by federal law.

Fed. R. Evid. 501; *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 511 F.2d 192, 197 (9th Cir. 1975), *aff'd*, 426 U.S. 394 (1976).

The "common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) . . . is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure." *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975) (citations omitted). The Ninth Circuit has since followed *Kerr* in requiring *in camera* review and a balancing of interests in ruling on the government's claim of the official information privilege. *See, e.g.*, *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976) ("[A]s required by *Kerr*, we recognize 'that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.'") (quoting *Kerr*, 426 U.S. at 406); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990) ("Government personnel files are considered official information. To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery.") (internal citations omitted).

**III.   ANALYSIS**

With these legal standards in mind, the Court has reviewed the documents, along with the audio and video recordings provided for *in camera* review. The Court finds that Defendant's objections to certain portions of documents should be overruled.

The Court finds that written statements and interview summaries, audio-recorded interviews, portions of video footage, medical reports and summaries, Plaintiff's photograph, and other direct evidence should be produced including the following:

- AGO 145-298: Statement or narrative of events produced by Plaintiff and CDCR staff and witness interview summaries contained in AIU Administrative Investigation Report, Case No. C-AIU-SATF-7166-23, for Grievance No. 525712 and Exhibits:
    - AGO 158-59: Plaintiff's Appeal of Grievance;
    - AGO 162: Photograph of Plaintiff;
    - AGO 178-85: Staff narratives;

- o AGO 193-94: Request for Medical Evaluation for Serious Bodily Injury and medical evaluation:
- o AGO 198-99: Medical Report of Injury;
- o AGO 203-04: Rules Violation Report;
- o AGO 210-12: Rules Violation Report;
- o AGO 213-20: Disciplinary Hearing Results;
- o AGO 274-91: California Code of Regulations, Title 15, Section 332;
- AGO 305-462: Statement or narrative of events produced by Plaintiff and CSATF staff and witness interview summaries contained in AIU Administrative Investigation Report, Case No. C-AIU-SATF-8200-23, for Grievance No. 439546 and Exhibits:
  - o AGO 318-19: Plaintiff's Appeal of Grievance;
  - o AGO 323: Photograph of Plaintiff;
  - o AGO 338-45: Staff narratives;
  - o AGO 353-54, 363-64: Request for Medical Evaluation for Serious Bodily Injury and medical evaluation;
  - o AGO 358-59, 361-64: Medical Report of Injury;
  - o AGO 366-67: Rules Violation Report;
  - o AGO 373-75: Rules Violation Report;
  - o AGO 376-83: Disciplinary Hearing Results;
  - o AGO 437-54: California Code of Regulations, Title 15, Section 332;
- Audio-Recorded Interview of Defendant S. Santiago and Lieutenant J. Ervin for C-AIU-SATF-7166-23 and AIU Case No. C-AIU-SATF-8200-23; and
- Body-Worn Camera Footage, "D 3 FLR 2 242414.g64x," beginning at timestamp 9:34:17.

These documents may be produced in redacted form to exclude any internal analyses or opinions regarding the evidence collected, as well as information regarding the procedures or staff conducting the investigation and personnel information such as badge numbers, personnel

(PERNR) numbers, work email addresses and phone numbers for Santiago and other CSATF staff members.

In considering the potential benefits of disclosure, the Court has considered whether the AIU Investigation Reports and exhibits, audio recordings, and body-worn camera footage are relevant to Plaintiff's claim of excessive force. The Court finds that the witness statements and identified exhibits, audio recordings, and body-worn camera footage, "D 3 FLR 2 242414.g64x" beginning after the first minute and eighteen seconds (beginning timestamp 09:34:17) contain direct evidence regarding the incident in this case, including contemporary witness accounts of the event recorded close in time to the incident at issue. *See Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006). Such evidence is directly relevant to this case and could be used as evidence at summary judgment or trial in this matter.

The Court has also evaluated Defendant's objections and finds that the risks identified in those objections do not outweigh the benefits that disclosure of these documents and recordings would have to this case. These documents, audio recordings, and portion of video footage are short and straightforward and do not reveal any confidential techniques that could undermine the effectiveness of CDCR investigations in the future. The documents do not contain the statements of any other inmates. Moreover, the Court is only requiring production of the witness statements and written interview summaries themselves along with exhibits identified above, not the entire AIU Investigation Report or any related discussion or evaluation of those summaries that could reveal the institution's techniques, impressions or personnel information, such as badge numbers, personnel (PERNR) numbers, work email addresses and phone numbers for Santiago and other CSATF staff members. The Court disagrees that disclosing such interviews would cause witnesses in the future to be less truthful in similar investigations. On the contrary, the fact that witness statements may be used later in court would seem to encourage candor in such situations.

The Court has also examined the photograph of the Plaintiff, and the Court does not find any information that could reveal confidential techniques that could undermine the effectiveness of such investigations in the future or lead to future misconduct. Rather, the photograph merely shows Plaintiff's head and shoulders against a blank background.

///

The Court finds that disclosure of these portions of documents, audio recordings, and body-worn camera footage, "D 3 FLR 2 242414.g64x" beginning at one minute and nineteen seconds (timestamp 9:34:17) "would promote the truth-finding process because they contain details of the parties' actions and statements recorded close to the time that the relevant events occurred. *See Woodford*, 548 U.S. at 94–95.  The Court finds that the disadvantages and risks identified in Santiago's objections do not outweigh the benefits that disclosure of these documents, or portions of documents, and recordings would have to this case.  *Sanchez,* 936 F.2d at 1033-34.

However, the Court sustains Defendant's objections to the production of the first minute and eighteen seconds of body-worn camera footage, "D 3 FLR 2 242414.g64x" (timestamped 09:33:00 to 09:34:16). This footage shows a nonparty inmate complying with an order from a nonparty correctional officer to undress as part of an unclothed search. This portion of footage is irrelevant to the claims in this case and must be redacted in the interests of inmate privacy.

The Court also sustains Santiago's objection to production of the body-worn camera footage "D 4 CNTRL 242422.g64x" from the control-booth officer. The Court has reviewed this footage and finds that it provides no evidence of the incident.  Moreover, it reveals aspects of the control booth whose disclosure could pose a security and safety risk for the institution.

The Court sustains Santiago's objection to production of (1) the institution's analyses and opinions, hiring review, and closing documents, and (2) CSATF personnel information such as badge numbers, personnel (PERNR) numbers, work email addresses and phone numbers for Santiago and other CDCR staff members.  The analyses and opinions, hiring review, closing documents, and personnel information are not directly relevant to the case because they are not direct evidence of what took place, and disclosure could risk the safety and security concerns identified in Santiago's objections.

After weighing the potential benefits and disadvantages of disclosure, the Court finds that the risks outweigh the benefits for producing the institution's analyses, opinions, and CDCR personnel and contact information contained in the AIU Investigation, along with video footage of a nonparty inmate and of the control booth.  These documents, or portions of documents, and

video footage should not be produced under the official information privilege because the potential disadvantages of disclosure outweigh the relevance of the documents to the litigation.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Santiago's objections to production of documents and recordings (ECF Nos. 51) are overruled in part.

1. No later than 30 days from the date of this order, Defendant shall provide the following portion of documents[1] to Plaintiff:[2]

    - AGO 145-298: Statement or narrative of events produced by Plaintiff and CSATF staff and witness interview summaries contained in AIU Administrative Investigation Report, Case No. C-AIU-SATF-7166-23, for Grievance No. 525712 and Exhibits:
        - AGO 158-59: Plaintiff's Appeal of Grievance;
        - AGO 162: Photograph of Plaintiff;
        - AGO 178-85: Staff narratives;
        - AGO 193-94: Request for Medical Evaluation for Serious Bodily Injury and medical evaluation:
        - AGO 198-99: Medical Report of Injury;
        - AGO 203-04: Rules Violation Report;
        - AGO 210-12: Rules Violation Report;
        - AGO 213-20: Disciplinary Hearing Results;
        - AGO 274-91: California Code of Regulations, Title 15, Section 3321;

---

[1] Only the portions of the documents described above, containing direct evidence and summary of witness accounts of the incident, shall be produced. Defendant may redact the institution's description of the process, analysis, conclusions of investigating staff, as well as personnel information such as badge numbers, personnel (PERNR) numbers, and work email addresses and phone numbers for Santiago and other CDCR staff members.

[2] To the extent Plaintiff is unable to obtain and review audio or video files for safety and security reasons in custody, Defendant shall make available these recordings for Plaintiff's review within the next 60 days and facilitate the filing of such evidence with the Court if requested by Plaintiff in connection with future proceedings.

- AGO 305-462: Statement or narrative of events produced by Plaintiff and CSATF staff and witness interview summaries contained in AIU Administrative Investigation Report, Case No. C-AIU-SATF-8200-23, for Grievance No. 439546 and Exhibits:
    - AGO 318-19: Plaintiff's Appeal of Grievance
    - AGO 323: Photograph of Plaintiff;
    - AGO 338-45: Staff narratives;
    - AGO 353-54, 363-64: Request for Medical Evaluation for Serious Bodily Injury and medical evaluation;
    - AGO 358-59, 361-64: Medical Report of Injury
    - AGO 366-67: Rules Violation Report
    - AGO 373-75: Rules Violation Report
    - AGO 376-83: Disciplinary Hearing Results
    - AGO 437-54: California Code of Regulations, Title 15, Section 3321
- Audio-Recorded Interview of Defendant S. Santiago and Lieutenant J. Ervin for C-AIU-SATF-7166-23 and AIU Case No. C-AIU-SATF-8200-23; and
- Body-Worn Camera Footage, "D 3 FLR 2 242414.g64x," beginning at one minute and nineteen seconds (timestamp 9:34:17).

2. Additionally, Defendant shall file a notice of compliance with the Court concurrently with production to Plaintiff.

IT IS SO ORDERED.

Dated: **December 5, 2025**         /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE

10