ROB BONTA, State Bar No. 202668
Attorney General of California
TYLER V. HEATH, State Bar No. 271478
Supervising Deputy Attorney General
BRIAN S. CHAN, State Bar No. 299926
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7368
 Fax:  (916) 324-5205
 E-mail:  Brian.Chan@doj.ca.gov
*Attorneys for Defendant Santiago*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **VINCENT DELEON,**<br><br>                                      Plaintiff,<br><br>          **v.**<br><br>**PHILLIPS, et al.,**<br><br>                                  Defendants. | 1:24-cv-00234 KES EPG (PC)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:        The Honorable Erica P. Grosjean<br>Action Filed:  2/26/2024 |

## TABLE OF CONTENTS

**Page**

Introduction..................................................................................................................... 1

Statement of Facts ........................................................................................................... 1

Summary Judgment Standard........................................................................................... 4

Argument ......................................................................................................................... 5

      I.      There is No Evidence Officer Santiago Used Force Maliciously and Sadistically to Harm to Deleon................................................................... 5

            A.     Legal Standard ............................................................................... 5

            B.     Officer Santiago Did Not Use Force Maliciously or Sadistically, But Only Used Necessary Force After DeLeon Ignored His Lawful Orders and Suddenly Physically Resisted a Legitimate Search for Drugs............................................................................................... 6

      II.    Officer Santiago is Protected by Qualified Immunity............................................ 11

Conclusion ...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ackley v. Carroll*
    2011 WL 2160896 (E.D. Cal. June 1, 2011) ............................................................................. 12

*Alexander v. City and County of San Francisco*
    29 F.3d 1355 (9th Cir. 1994) ..................................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ............................................................................................................ 4, 5

*Anthony v. Schackmann*
    402 Fed.Appx. 207 (9th Cir. 2010) ........................................................................................... 8

*Barker v. Gollette*
    No. 2:23-cv-00390-GW-SSC, 2025 WL 1421911 (C.D. Cal. No. Apr. 12,
    2025) .......................................................................................................................................... 8

*Bearchild v. Cobban*
    947 F.3d 1130 (9th Cir. 2020) ................................................................................................... 6

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ................................................................................................................... 5

*County of Los Angeles v. Mendez*
    581 U.S. 420 (2017) ................................................................................................................... 7

*Dao v. Tabor*
    No. 2:22-CV-00846 TLN CSK P, 2024 WL 2259138 (E.D. Cal. May 17,
    2024), *report and recommendation adopted*, No. 2:22-CV-00846-TLN-CSK,
    2024 WL 4268095 (E.D. Cal. Sept. 23, 2024) .................................................................... 8, 13

*Dennis v. Thurman*
    959 F. Supp. 1253 (C.D. Cal. 1997) ........................................................................................ 10

*Farmer v. Brennan*
    511 U.S. 825 (1994) ................................................................................................................... 5

*Gibbs v. Herrera, et al.*
    No. 2:21-CV-02188 TLN AC P, 2026 WL 1328658 (E.D. Cal. May 13, 2026) ................. 7, 10

*Harlow v. Fitzgerald*
    457 U.S. 800, 818 (1982) ......................................................................................................... 11

*Hoard v. Hartman*
    904 F.3d 780 (9th Cir. 2018) ................................................................................................. 5, 9

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Hudson v. McMillian*
   503 U.S. 1 (1992) ................................................................................................*passim*

*Hughes v. Rodriguez*
   31 F.4th 1211 (9th Cir. 2022) ....................................................................................... 11

*Jeffers v. Gomez*
   267 F.3d 895 (9th Cir. 2001) ........................................................................................ 11

*Jordan v. Gardner*
   986 F.2d 1521 (9th Cir. 1993) ........................................................................................ 7

*Kingsley v. Hendrickson*
   576 U.S. 389 (2015) ........................................................................................................ 9

*Leonard v. Hoover*
   76 F. App'x 55 (6th Cir. 2003) (unpublished) ......................................................... 8, 10

*Madrid v. Gomez*
   889 F. Supp. 1146 (N.D. Cal. 1995) .......................................................................... 9, 12

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*
   475 U.S. 574 (1986) ........................................................................................................ 5

*Michenfelder v. Sumner*
   860 F.2d 328 (9th Cir. 1988) ........................................................................................ 10

*Moore v. Machado*
   2009 WL 4051082 (N.D. Cal. Nov. 20, 2009) ............................................................ 12

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.* (*In re Oracle Corp. Sec.*
   *Litig.*)
   627 F.3d 376 (9th Cir. 2010) .......................................................................................... 4

*Pearson v. Callahan*
   555 U.S. 223, 236 (2009) .............................................................................................. 12

*Reid v. United States*
   825 Fed. App'x 442 (9th Cir. 2020) ............................................................................... 5

*Rice v. Morehouse*
   989 F.3d 1112 (9th Cir. 2021) ...................................................................................... 11

*Roberts v. Samardvich*
   909 F. Supp. 594 (N.D. Ind. 1995) ................................................................................. 8

iii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Saucier v. Katz*
  533 U.S. 194, 201 (2001)..................................................................................... 11, 12

*Scott v. County of San Bernardino*
  903 F.3d 943, 952 (9th Cir. 2018 .............................................................................. 11

*Scott v. Harris*
  550 U.S. 372 (2007)................................................................................................... 11

*Spain v. Procunier*
  600 F.2d 189 (9th Cir.1979)...................................................................................... 10

*Swift v. Iramina*
  2008 WL 1912470, at *3 ........................................................................................ 8, 12

*Whitley v. Albers*
  475 U.S. 312 (1986)............................................................................................. 6, 8, 9

*Wilkins v. Gaddy*
  559 U.S. 34 (2010) (per curiam) ........................................................................... 5, 12

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment..............................................................................................*passim*

**COURT RULES**

Federal Rules of Civil Procedure
  56(c) ......................................................................................................................... 4, 5

## INTRODUCTION

Plaintiff Vincent DeLeon currently proceeds on an Eighth Amendment excessive force claim against Correctional Officer S. Santiago, based on his allegations that Officer Santiago tackled him from behind and knocked him unconscious while he was handcuffed and obeying Officer Santiago's orders to walk backwards out of his cell. However, indisputable evidence, including body-worn camera footage, shows that during a building-wide search of DeLeon's housing unit for contraband, Officer Santiago observed DeLeon hide unknown contraband within his mouth before his cell could be searched. Officer Santiago ordered DeLeon to spit out the contraband and took hold of DeLeon's right arm, but instead of obeying Officer Santiago's direct order, DeLeon suddenly turned away to break out of Officer Santiago's hold. Based on DeLeon's sudden movement and unknown intentions, Officer Santiago immediately tried to disengage and create a safe distance by pushing DeLeon away from himself. DeLeon then lost his balance, tripped over the toilet bowl in his cell, and struck his head. Once Officer Santiago and other responding officers helped DeLeon to his feet, DeLeon used his head to flush the unknown contraband down the toilet before correctional officers could confiscate it. All of this was caught on body-warn camera footage and is not subject to a reasonable dispute. Because no reasonable jury can find that Officer Santiago used force maliciously or sadistically for the purpose of causing DeLeon harm, and because Officer Santiago is entitled to qualified immunity, the Court should grant summary judgment to Officer Santiago on DeLeon's Eighth Amendment claims and dismiss this action in its entirety.

## STATEMENT OF FACTS

During the events at issue, Plaintiff Vincent DeLeon was an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and was incarcerated at California Substance Abuse Treatment Facility (SATF). (Def.'s Statement of Undisputed Facts (DSUF) ¶ 1.) Officer Santiago was employed at SATF as a Correctional Officer, and during the evens at issue, Officer Santiago was assigned to be a Security Escort Officer in Facility D. (DSUF ¶ 2.)

1

On July 20, 2023, at approximately 9:35 a.m., Officer Santiago assisted other correctional officers with a mass search of Building 4 in Facility D, which was also the housing unit where DeLeon was being housed. (DSUF ¶¶ 3-4.) Correctional officers were performing a mass search of Building 4 because several inmates in that building had recently suffered overdoses. (DSUF ¶ 4.) It was imperative that the officers thoroughly searched each cell and inmate to find and confiscate any drugs and work to prevent further overdoses.

Early into the mass search of Building 4, Officer Santiago approached DeLeon's cell, Cell 104, and instructed DeLeon to wake up and turn on the lights because correctional staff were conducting cell searches for the building and DeLeon would need to come out of his cell. (DSUF ¶ 5.) After DeLeon stood up from the bottom bunk and turned on the light, Officer Santiago ordered DeLeon to submit to an unclothed body search and to hand over his clothes for inspection. (DSUF ¶ 6.) DeLeon complied and handed over his clothes through the cell door's food port, and Officer Santiago performed a search of DeLeon's clothing that found no weapons or contraband. (DSUF ¶ 7.) After Officer Santiago handed DeLeon back his clothes, and after DeLeon dressed and returned to the lower bunk, Officer Santiago continued to visually monitor DeLeon for any suspicious activity. (DSUF ¶ 8.) Officer Santiago then observed that DeLeon picked up an unknown object near where he was sitting on the lower bunk. (DSUF ¶ 9.)

Officer Santiago ordered DeLeon to then turn around and submit to flex cuffs. (DSUF ¶ 10.) As DeLeon was turning towards the food port, Officer Santiago observed DeLeon reach inside his left side short pocket, retrieve an unknown object with his left hand, bring the unknown object up towards his facial area, and when his hand came back down, he no longer had the object in his hand. (DSUF ¶ 11.) Officer Santiago then placed DeLeon in flex cuffs behind his body and asked the control booth officer to open Cell 104. (DSUF ¶ 12.)

As DeLeon stood at the threshold of the cell, Officer Santiago observed that DeLeon appeared to have something inside of his mouth. (DSUF ¶ 13.) Officer Santiago gave DeLeon a direct order to open his mouth and stick out his tongue, which he obeyed. (DSUF ¶ 14.) When Officer Santiago then ordered DeLeon to lift his tongue up, DeLeon closed his mouth to move what he had under his tongue to the top of his mouth. (DSUF ¶ 15.) DeLeon then reopened his

2

mouth, and as he lifted his tongue, Officer Santiago observed an unknown object inside of his mouth that appeared to be a "bindle." (DSUF ¶ 16.) In prison, the term "bindle" is used to describe a small package or bundle that is commonly used to conceal drugs. (DSUF ¶ 17.) Officer Santiago gave DeLeon a direct order to spit out the "bindle" he had in his mouth, and DeLeon refused to obey that order. (DSUF ¶ 18.)

After placing his right hand on DeLeon's right forearm, Officer Santiago turned and advised Sergeant Saucedo, who was standing nearby, that DeLeon might have a "bindle" in his mouth. (DSUF ¶ 19.) As Officer Santiago turned his attention back to DeLeon, DeLeon attempted to pull away from Officer Santiago's grip by bending at the waist and in a lunging motion turned his body counterclockwise back towards the toilet inside of his cell. (DSUF ¶ 20.) When DeLeon suddenly moved and turned, Officer Santiago immediately became afraid for his own physical safety because he did not know DeLeon's intentions. (DSUF ¶ 21.) Given DeLeon's apparent attempt to hide contraband inside of his mouth, Officer Santiago did not know if DeLeon also had a weapon on his body or in his cell and was turning to retrieve the weapon. (*Id.*) Additionally, at the time of the incident, Officer Santiago was approximately five-foot-three in height and weighed about two-hundred-and-fifteen pounds. (DSUF ¶ 22.) In contrast, DeLeon appeared to Officer Santiago to be over six feet in height and appeared to weigh much more than he did. (*Id.*) Even though DeLeon was still flex-cuffed behind his back, Officer Santiago was still afraid for his own physical safety because DeLeon's greater height and body weight would allow him to break free from his hold on his right arm. (DSUF ¶ 23.) Once DeLeon was free from Officer Santiago's physical hold, DeLeon could still seriously injure Officer Santiago or others if he turned and charged at him or other nearby officers. (*Id.*)

In response to DeLeon's sudden movement and turning his body, and based on Officer Santiago's concern for his own physical safety and the safety of others, Officer Santiago immediately used both of his hands and his body weight to push DeLeon forward and into his cell. (DSUF ¶ 24.) DeLeon then appeared to lose his balance, trip over the toilet bowl, and fall towards the bottom bunk. (DSUF ¶ 25.) Due to Officer Santiago's surprise and his attempt to regain his own footing after pushing DeLeon, Officer Santiago was unable to see if DeLeon

3

struck anything during his fall. (DSUF ¶ 26.) When Officer Santiago pushed DeLeon back into his cell, Officer Santiago's goal for using that force was to create some distance between DeLeon and himself, and to contain DeLeon within his cell. (DSUF ¶ 27.) Officer Santiago did not use force on DeLeon with the goal of having him hit his head or suffer any other serious injury. (*Id.*)

Responding staff immediately arrived and assisted Officer Santiago with taking DeLeon into custody. (DSUF ¶ 28.) As the officers helped DeLeon back up onto his feet and attempted to escort him out of the cell, DeLeon physically resisted being led out and instead bent his head and body towards the toilet again. (DSUF ¶ 29.) DeLeon used his head to press the toilet's flush button in order to flush the unknown object he had hidden inside of his mouth down the toilet. (DSUF ¶ 30.) DeLeon was then escorted outside of his cell to one of the tables in the day room, where Officer Santiago observed Plaintiff appeared to have a laceration in the middle of his forehead that was actively bleeding. (DSUF ¶ 31.) Medical staff were immediately notified about Plaintiff's injury, and once an Emergency Response Vehicle arrived at the building, another correctional officer escorted DeLeon out of the building to the Triage and Treatment Area. (DSUF ¶ 32.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.* (*In re Oracle Corp. Sec. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

4

of proof at trial. *Celotex Corp.*, 477 U.S. at 322. Once the moving party has carried its burden, the burden shifts to the non-moving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opposing party may not rely upon the allegations or denials of its pleadings, but must tender specific facts in the form of affidavits and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. Disputed facts must be material, meaning the fact could affect the outcome of the action under governing law and that the dispute is genuine, meaning the evidence presented is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-48.

## ARGUMENT

**I.    THERE IS NO EVIDENCE OFFICER SANTIAGO USED FORCE MALICIOUSLY AND SADISTICALLY TO HARM TO DELEON.**

### A.    Legal Standard

The Eighth Amendment prohibits the use of "excessive physical force" against prisoners. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.' " *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (*quoting Hudson*, 503 U.S. at 9) (quotation marks omitted). The issue turns on "whether force was applied in a good faith effort to maintain or restore [prison] discipline, or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6-7 (citation and quotations omitted).

In the Ninth Circuit, a plaintiff asserting an Eighth Amendment excessive force claim need show only that correctional officers: "(1) acted for the very purpose of causing harm; (2) used excessive and unnecessary force under all of the circumstances; and (3) caused the plaintiff harm." *Reid v. United States*, 825 Fed. App'x 442, 445 (9th Cir. 2020) (citation and quotations omitted); *Hoard v. Hartman*, 904 F.3d 780, 789 (9th Cir. 2018).

There are two general components to an excessive force claim: "(1) a 'subjective' inquiry into whether prison staff acted 'with a sufficiently culpable state of mind'; and (2) an 'objective component' that ask[s] whether 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.' " *Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020). "Five factors bear on the excessive force analysis in a typical Eighth Amendment claim: (1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Id.* at 1141 (citations and quotations omitted).

**B.    Officer Santiago Did Not Use Force Maliciously or Sadistically, But Only Used Necessary Force After DeLeon Ignored His Lawful Orders and Suddenly Physically Resisted a Legitimate Search for Drugs.**

Officer Santiago is entitled to summary judgment because the undisputed facts, and body-warn camera footage, show he did not use force maliciously and sadistically, but instead used force in a good faith effort to maintain and restore discipline. When weighed together, at least four of the five *Hudson* factors weigh in his favor.

Starting with the second and fourth *Hudson* factors (the need for application of force and the threat reasonably perceived), the undisputed evidence shows Officer Santiago needed to apply force in this instance because he reasonably perceived that DeLeon's sudden movement to break out of his physical hold posed a threat to his safety and the safety of other staff.

In considering whether prison officials perceived a threat, courts must consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The Supreme Court cautioned in *Whitley* that, in weighing this factor, courts should be mindful that, "in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." *Id.* at 320. In addition, "[d]espite the weight of these competing concerns, corrections officers must make their decisions in haste, under pressure, and

6

frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6 (citing *Whitley*, 475 U.S. at 320). "Whether in the context of a prison-wide disturbance or an individual confrontation between an officer and a prisoner, corrections officers often must act immediately and emphatically to defuse a potentially explosive situation." *Jordan v. Gardner*, 986 F.2d 1521, 1528 (9th Cir. 1993). Ultimately, "the need for force [] is at the heart of the [excessive force determination]." *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994), *abrogated on other grounds by County of Los Angeles v. Mendez*, 581 U.S. 420 (2017).

Here, the indisputable evidence, including body camera footage, shows Officer Santiago reasonably perceived a threat based on DeLeon's escalating behavior and needed to use force to respond to that threat. Officer Santiago was one of several officers conducting a building-wide search of DeLeon's housing unit after several other inmates had experienced overdoses. (DSUF ¶ 4.) It was imperative staff conducted a thorough search of all inmates and their cells to try to prevent further overdoses. During the process of removing DeLeon from his cell to perform a cell search, Officer Santiago observed DeLeon retrieve an unknown object from his lower bunk bed and conceal that object inside his mouth. (DSUF ¶¶ 8-13.) Officer Santiago suspected DeLeon was attempting to secure drugs to keep them from being found and seized. (*Id.*) After opening the cell door, Officer Santiago ordered DeLeon to open his mouth and observed DeLeon had hidden a bindle inside of his mouth. (DSUF ¶¶ 14-17.) Officer Santiago then ordered DeLeon to spit out the bindle, but DeLeon refused to comply with that order. (DSUF ¶ 18.) Instead of obeying Officer Santiago's direct order, DeLeon suddenly turned to break out of Officer Santiago's hold on his right arm. (DSUF ¶¶ 19-20.) Based on DeLeon's prior suspicious behavior, and DeLeon's height and weight advantage, Officer Santiago reasonably perceived that DeLeon posed a threat when DeLeon suddenly physically resisted rather than obey the order to spit out the contraband he was hiding in his mouth. (DSUF ¶¶ 21-23.)

Given these circumstances, Officer Santiago reacted appropriately by using force to push DeLeon away. *See, e.g., Gibbs v. Herrera, et al.*, No. 2:21-CV-02188 TLN AC P, 2026 WL 1328658, *12 (E.D. Cal. May 13, 2026) ("Even assuming that plaintiff's sudden movement was the result of shoulder pain, as plaintiff asserts, defendants reasonably perceived plaintiff's

7

behavior as continued, active defiance that posed an imminent threat to their safety and the safety of others in the law library."); *Barker v. Gollette*, No. 2:23-cv-00390-GW-SSC, 2025 WL 1421911, *7-9 (C.D. Cal. No. Apr. 12, 2025) (granting summary judgment to defendants after finding that officers' use of force was warranted when inmate refused to obey orders to exit his cell and appeared to be concealing contraband in his pants, which led to the officers pulling the inmate to out of the cell and onto the ground); *Dao v. Tabor*, No. 2:22-CV-00846 TLN CSK P, 2024 WL 2259138 (E.D. Cal. May 17, 2024), *report and recommendation adopted*, No. 2:22-CV-00846-TLN-CSK, 2024 WL 4268095 (E.D. Cal. Sept. 23, 2024) (granting partial summary judgment to defendants after finding the defendants' alleged slamming of plaintiff to the ground was a reasonable use of force in response to plaintiff's physical resistance and violently pulling away from one of the defendants' grasp); *Leonard v. Hoover*, 76 F. App'x 55, 57 (6th Cir. 2003) (unpublished) ("The officers had reason to believe [the plaintiff] had dangerous contraband, and his repeated refusals to comply with orders to submit to a search justified the application of force."); *see also Anthony v. Schackmann*, 402 Fed.Appx. 207, 208 (9th Cir. 2010) (discussing that a single unprovoked slap by correctional officer on prisoner constituted de minimis force which did not violate the Eighth Amendment); *see also Swift v. Iramina*, 2008 WL 1912470, at *3 (D. Haw. Apr. 29, 2008) (allegation that prison guard pushed plaintiff in response to question did not state Eighth Amendment violation); *Roberts v. Samardvich*, 909 F. Supp. 594, 604 (N.D. Ind. 1995) (grabbing inmate, pushing him up stairs toward his cell, and placing him in cell cuffed, shackled, and secured to door was de minimis force under circumstances).[1]

As for the third and fifth *Hudson* factors (relationship between need for force and amount of force used, and any efforts made to temper severity of forceful response), the evidence shows Officer Santiago applied the minimal amount of force required to protect himself from Deleon's active resistance.

The Supreme Court emphasized in *Whitley* that, in analyzing the relationship between the need for force and the force used, simple overreaction by an officer is not enough to establish an

---

[1] All unpublished cases cited herein will be concurrently served on Plaintiff pursuant to the Local Rules.

Mem. P. & A. Supp. Def.'s Mot. Summ. J. (1:24-cv-00234 KES EPG (PC))

Eighth Amendment violation. "It is obduracy and wantonness, not inadvertence or error in good faith, that [violates the Eighth Amendment]." *Whitley*, 475 U.S. at 319. "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* Objectively unreasonable force, without more, is not a violation. *Hoard*, 904 F.3d at 788 & n.9 (a plaintiff must show that the defendant used "excessive and unnecessary force under all of the circumstances," in addition to showing that the defendant acted "for the very purpose of causing harm," and "caused the plaintiff harm"). Rather, to establish an Eighth Amendment violation, the force used must have been malicious and sadistic for the very purpose of causing harm. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).

Here, no reasonable juror could find that the force Officer Santiago used was excessive under the circumstances, let alone that he applied force maliciously and sadistically *for the purpose* of causing harm. Prior to using force, Officer Santiago made reasonable efforts to obtain DeLeon's compliance without the use of force. (DSUF ¶¶ 13-19.) Officer Santiago directly ordered DeLeon to spit out the bindle hidden in his mouth, and when DeLeon refused to obey that order, Officer Santiago turned to inform his supervisor rather than use force to compel DeLeon's compliance. (*Id.*) It was only after DeLeon physically resisted and turned to break out of Officer Santiago's hold that any force was used. (DSUF ¶¶ 20 & 24.) Officer Santiago also only used the minimum amount of force necessary to protect himself by pushing DeLeon away from himself in an attempt to gain distance and disengage, (DSUF ¶ 24); although DeLeon tripped and struck his head as a result of being pushed, there is no evidence Officer Santiago maliciously pushed DeLeon in order to cause that injury, (DSUF ¶¶ 24 & 27). *Madrid v. Gomez*, 889 F. Supp. 1146, 1166 (N.D. Cal. 1995) ("[t]here are certainly instances where, in the heat of the moment, officers may use more force than intended. Such a case would suggest that the officers did not act with punishment in mind"). Moreover, Officer Santiago did not tackle DeLeon (as DeLeon alleges in his complaint), or use more extreme force (such as with a baton or pepper spray) even though DeLeon's disobedience and sudden physical resistance may have justified it.

9

*See Gibbs v. Herrera, et al.*, 2026 WL 1328658, *11-12; *see Dennis v. Thurman*, 959 F. Supp. 1253, 1260 (C.D. Cal. 1997) ("Correctional officers may be required to use some measure of force if an inmate refuses a valid order."); *Leonard v. Hoover*, 76 F. App'x at 57; *see also Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988) (taser was "used to enforce compliance with a search that had a reasonable security purpose, not as punishment"); *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.1979) (finding use of tear gas is reasonably necessary if prisoner refuses to obey orders to leave a cell).

Finally, for the first *Hudson* factor (the extent of injury suffered by the inmate), Officer Santiago acknowledges the first factor weighs in DeLeon's favor because DeLeon suffered a laceration to the middle of his forehead. (DSUF ¶ 31.) However, contrary to DeLeon's claims otherwise, the indisputable evidence shows that DeLeon was not knocked unconscious after he tripped and hit his head. Rather, the body-worn camera footage shows that DeLeon was conscious when Officer Santiago and other officers helped DeLeon to his feet, and that DeLeon deliberately bent over and used his head to hit the toilet's flush button to flush away the unknown contraband he had attempted to conceal from Officer Santiago. (DSUF ¶¶ 29-30.) Given the actual extent of DeLeon's injury, the other four *Hudson* factors therefore outweigh the first *Hudson* factor and collectively weigh in Officer Santiago's favor.

In his complaint and during his deposition, DeLeon has repeatedly claimed that he obeyed all Officer Santiago's orders and that Officer Santiago suddenly used force against him without justification. (ECF No. 11 at 3-4; Depo. Transcript of Vincent DeLeon, Chan Decl. Exh. D at 57:16-64:17.) DeLeon also alleges that he struck his head and was knocked unconscious due to Officer Santiago "tackling" him. (ECF No. 11 at 3-4; Chan Decl. Exh. D at 65:8-66:17) However, the video definitively shows that DeLeon did not obey all of Officer Santiago's orders, and in fact shows DeLeon refused to obey Officer Santiago's order to spit out whatever DeLeon was hiding in his mouth. (DSUF ¶ 18.) The video also shows that Officer Santiago did not tackle or strike DeLeon, but instead that DeLeon suddenly turned to break Officer Santiago's hold on his right arm and that in response to DeLeon's sudden action, Officer Santiago pushed DeLeon away to create distance and disengage. (DSUF ¶¶ 19-24 & 27.) Further, the video shows that

10

DeLeon was not knocked unconscious; instead, the video shows that as the officers were assisting DeLeon out of the cell, DeLeon physically resisted and used his head to hit the toilet's flush button, thereby disposing of the contraband that DeLeon had been attempting to conceal from Officer Santiago. (DSUF ¶¶ 29-30.) In deciding whether summary judgment is appropriate on a claim of excessive force, courts "do not credit a party's version of events that the record, such as an unchallenged video recording of the incident, quite clearly contradicts." *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) (quoting *Scott v. County of San Bernardino*, 903 F.3d 943, 952 (9th Cir. 2018)); *see Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (where video recording depicted events at issue, the district court erred when it denied defendant's motion for summary judgment because, instead of viewing the facts in the light most favorable to the plaintiff, it should have viewed the facts in the "light depicted in the videotape"); *Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) ("[F]or purposes of ruling on a motion for summary judgment[ on claim of excessive force], a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio blatantly contradict testimonial evidence.").

Because the indisputable evidence shows Officer Santiago did not push DeLeon maliciously or sadistically for the purpose of causing him harm, but instead pushed DeLeon as a defensive reaction to DeLeon's sudden physical resistance and prior suspicious behavior, this Court should grant summary judgment to Officer Santiago on DeLeon's Eighth Amendment excessive force claim.

## II.   OFFICER SANTIAGO IS PROTECTED BY QUALIFIED IMMUNITY.

Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001)

*overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling Saucier's requirement that the two prongs be decided sequentially). These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Thus, if a court decides that plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or constitutional violation. *Pearson*, 555 U.S. at 236-42.

Here, Officer Santiago is entitled to qualified immunity from DeLeon's Eighth Amendment excessive force claim because, as discussed above, the indisputable evidence shows he did not violate DeLeon's Eighth Amendment rights. Instead, the facts show Officer Santiago only pushed DeLeon away after DeLeon had refused to obey orders to spit out contraband from his mouth and suddenly attempted to break out of Officer Santiago's physical hold.

Further, the law does not clearly establish that Officer Santiago's pushing DeLeon under these circumstances violated clearly established law. Ordinarily, a push or a shove that causes no discernible injury would not violate the Eighth Amendment because it is not the type of force that would be considered "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38; *see, e.g., Ackley v. Carroll*, 2011 WL 2160896, at *8 (E.D. Cal. June 1, 2011) (officer pushing an inmate against a wall and kicking his legs apart during a pat-down search was de minimis use of force); *Moore v. Machado*, 2009 WL 4051082, at *5 (N.D. Cal. Nov. 20, 2009) (throwing an inmate against a wall and twisting his arm was a de minimis use of force); *Swift v. Iramina*, 2008 WL 1912470, at *3 (allegation that prison guard pushed plaintiff in response to question did not state Eighth Amendment violation). Although DeLeon did suffer an injury by tripping over the toilet and striking his head, there is no evidence showing Officer Santiago intended to cause that injury when he pushed DeLeon. (DSUF ¶ 27; *Madrid*, 889 F. Supp. at 1166 ("[t]here are certainly instances where, in the heat of the moment, officers may use more force than intended. Such a case would suggest that the officers did not act with punishment in mind").) Given the

12

circumstances, the law does not clearly establish that a reasonable correctional officer under similar circumstances would have violated DeLeon's Eighth Amendment rights by pushing DeLeon, accidentally causing him injury, and using no further force against him. In contrast, courts in this district have granted summary judgment to correctional officers who deliberately used force to take inmates to the ground when those inmates refused valid orders and physically pulled away from the officers' hold. *See, e.g., Dao v. Tabor*, 2024 WL 2259138, *8 (granting partial summary judgment to defendants after finding the defendants' alleged slamming of plaintiff to the ground was a reasonable use of force in response to plaintiff's physical resistance and violently pulling away from one of the defendants' grasp).

Accordingly, the Court should grant summary judgment to Officer Santiago based on his qualified immunity.

## CONCLUSION

Officer Santiago did not use excessive force against DeLeon. The indisputable evidence, including body camera footage, shows Officer Santiago only used force to push DeLeon away from himself after DeLeon attempted to conceal contraband in his mouth, refused direct orders to spit the contraband out, and then suddenly moved to break away from Officer Santiago's hold.

///

///

///

13

Because no reasonable jury can find that Officer Santiago used force maliciously or sadistically to cause DeLeon harm, and because Officer Santiago is entitled to qualified immunity, this Court should grant summary judgment to Officer Santiago on DeLeon's Eighth Amendment claims and dismiss this action in its entirety.

Dated: May 22, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
TYLER V. HEATH
Supervising Deputy Attorney General

*/s/ Brian S. Chan*
BRIAN S. CHAN
Deputy Attorney General
*Attorneys for Defendant Santiago*

SA2024305582
39851059

14