Rob Bonta, State Bar No. 202668
Attorney General of California
Tyler V. Heath, State Bar No. 271478
Supervising Deputy Attorney General
Brian S. Chan, State Bar No. 299926
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7368
 Fax:  (916) 324-5205
 E-mail:  Brian.Chan@doj.ca.gov
*Attorneys for Defendant Santiago*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **VINCENT DELEON,**<br><br>                               Plaintiff,<br><br>          **v.**<br><br>**PHILLIPS, et al.,**<br><br>                               Defendants. | 1:24-cv-00234 KES EPG (PC)<br><br>**DECLARATION OF BRIAN S. CHAN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, Brian S. Chan, declare:

1.   I am a member of the California State Bar, admitted to practice before this Court, and employed by the Office of the Attorney General of the State of California as a Deputy Attorney General.  I represent Defendant S. Santiago in the above-entitled action.  I submit this declaration in support of Defendant's motion for summary judgment.

2.   Attached to this declaration as **Exhibit A** is a true and correct copy of the video recording from Defendant Santiago's body-worn cameras, which was recorded on July 20, 2023. Additionally, attached to this declaration as **Exhibit B** is a true and correct copy of the video recording from non-party Officer M. Altamirano, which was also recorded on July 20, 2023.  My office obtained the copies of these recordings from the custodian of these records at California

1

Substance Abuse Treatment Facility.  Copies of these recordings will be electronically lodged with the Court.  The video files have previously been disclosed to Plaintiff, and I will make reasonable accommodations to show these to Plaintiff again before his opposition to the Motion for Summary Judgment is due.

3.    Attached to this declaration as **Exhibit C is** a true and correct copy of the CDCR 7219 Form that was prepared for Plaintiff Vincent DeLeon on July 20, 2023.  My office obtained a copy of this document from the custodian of Plaintiff DeLeon's central file records at California Substance Abuse Treatment Facility.  A copy of the affidavit from the custodian of records is included with Exhibit C.

4.    On March 27, 2026, I took the deposition of Plaintiff Vincent DeLeon via video conference.  Attached to this declaration as **Exhibit D** is a true and correct copy of excerpts from the deposition transcript of Plaintiff DeLeon from March 27, 2026.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed this May 22, 2026, in Sacramento, California.

*/s/ Brian Chan*
BRIAN CHAN

SA2024305582
Declaration of Brian S. Chan in Support of MSJ

2

# EXHIBIT A

Santiago Body Cam Footage-

Lodged with Judge Grosjean

# EXHIBIT B

Altamirano Body Cam Footage-

Lodged with Judge Grosjean

# EXHIBIT C

## AFFIDAVIT OF CUSTODIAN OF RECORDS
### Department of Corrections and Rehabilitation
### California Substance Abuse and Treatment Facility and State Prison at Corcoran

I, Jason Barba, hereby declare as follows:

1. That I am the duly authorized custodian of record and/or other qualified witness for the above named entity.
2. As such, I have the authority to certify these records as true and correct.
3. The original records, of which copies are enclosed, were prepared by the personnel of this business/agency in the ordinary course of doing business at or near the time of the act, condition or event of which they reflect.

RE: **Vincent Deleon, CDCR# BA-2490**

**Electric Records Management System (ERMS)**
**Strategic Offender Management System (SOMS)**

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 11th day of December 2024, in Corcoran, California.

Jason Barba
Litigation Office
California Substance Abuse and Treatment Facility and State Prison at Corcoran

STATE OF CALIFORNIA
**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**
CDCR 7219 (Rev. 01/18)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

| NAME OF INSTITUTION SATF | LOCATION OF EVALUATION TTA | | DATE 7/20/23 |
|---|---|---|---|

REASON FOR REPORT  ☐ ALLEGATION    ☐ ON THE JOB INJURY    ☐ USE OF FORCE  ☒ INJURY    ☐ OTM RETURNS
☒ UNUSUAL OCCURRENCE    ☐ PRE AD/SEG ADMISSION    ☐ R&R    ☐ OTHER

| NAME LAST O'Leon | FIRST Vincent | CDCR NUMBER BA8490 | PERNR / INST. ID # na | VISITOR ID # (SOMS) na |
|---|---|---|---|---|

| PLACE OF OCCURRENCE D4 | DATE OF OCCURRENCE 7/20/23 | TIME OF OCCURRENCE 0948 | TIME SEEN 0957 | RN NOTIFIED TIME 0954 | PHYSICIAN NOTIFIED TIME Halos 0955 |
|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"They were searching my cell and I tripped and fell and hit my head on the wall or toilet"

| INJURIES FOUND?  YES / NO | |
|---|---|
| Abrasion Scratch | 1 |
| Active Bleeding | (3) |
| Broken Bone | 2 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | (9) |
| Swollen Area | (10) |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Pre-Existing | 16 |
| Other | 17 |
| | 18 |
| Chemical Agent Exposure?  YES / (NO) | |
| Chem Agent Exposure Area | EX |
| Decontaminated w. Water? YES / NO / REFUSED | |
| Decontaminated w. Air? YES / NO / REFUSED | |
| Self-decontamination Instructions given ?  YES / NO | |
| Staff issued Exposure packet ?  YES / NO | |

Q 15 min. check times

| Initial — | 1st Check — |
|---|---|
| 2nd Check — | Final — |

TIME/DISPOSITION   RTC   1320

Right

Left

Front  29, 11, 14, 10

Back

| REPORT COMPLETED BY TITLE (PRINT AND SIGN) A. Campbell, RN | PERNR / INST. ID # 116582 | RDOs Sat/Sun | ASSIGNMENT AREA TTA Redirect. (G3 crn) |
|---|---|---|---|

# EXHIBIT D



# Transcript of **Vincent DeLeon**

Friday, March 27, 2026

*Vincent DeLeon v. Phillips, et al.*

www.LexitasLegal.com
800.FOR.DEPO (800.367.3376)
DC.Scheduling@LexitasLegal.com

Reference Number: 164927

Case 1:24-cv-00234-KES-EPG   Document 65-4   Filed 05/22/26   Page 10 of 40

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION


VINCENT DELEON,                )
                               ) Case No. 1:24-cv-00234 KES EPG
          Plaintiff,           )
                               )
vs.                            )
                               )
PHILLIPS, et al.               )
                               ) (Pages 1 - 99)
          Defendants.          )
_____)




VIDEOCONFERENCE DEPOSITION OF

VINCENT DELEON

Thursday, March 27, 2026









Reported by: John Fahrenwald,  CA CSR 14369, RPR

_____



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 11 of 40

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

VINCENT DELEON,                )
                               ) Case No. 1:24-cv-00234 KES EPG
            Plaintiff,         )
                               )
vs.                            )
                               )
PHILLIPS, et al.               )
                               )
            Defendants.        )
_____)

Videoconference Deposition of deponent VINCENT DELEON, taken on behalf of Defendant Santiago, commencing at 9:01 a.m., PT, March 27, 2026, before Reporter John Fahrenwald, Certified Shorthand Reporter for the State of California, CSR No. 14369, RPR.

Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 12 of 40

APPEARANCES:


PRO SE PLAINTIFF:

          BY:  VINCENT DELEON (BA-2490)

               California State Prison - Corcoran

               Facility 3A

               P.O. Box 3461

               Corcoran, California 93212




FOR DEFENDANT SANTIAGO:

          BY:  BRIAN S. CHAN, ESQ.

               Deputy Attorney General

               1300 I Street, Suite 125

               Sacramento, California 95814

               Telephone No: (916) 210-7368

               Facsimile:  (916) 324-5205

               Brian.Chan@doj.ca.gov



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 13 of 40

                              INDEX


DEPONENT                                             PAGE

VINCENT DELEON

Examination by MR. CHAN                               5


                             EXHIBITS

Exhibit No. A      Deposition Notice                  7

Exhibit No. B      Rules Violation Report             85

Exhibit No. C      Rules Violation Report 6923442     87

Exhibit No. D      Rules Violation Report 4411725     88



Corcoran, California

9:01 a.m.

--oOo--

(Whereupon the court reporter stated his name and certification number on the record.)

VINCENT DELEON,

called as a witness herein, having been first duly sworn,

was examined and testified as follows:

EXAMINATION

BY MR. CHAN:

Q.   Hello again, Mr. DeLeon.

Again, for the record, my name is Brian Chan.  I'm an attorney with the California Attorney General's Office, and I represent Defendant Santiago in the lawsuit DeLeon versus Santiago.

Mr. DeLeon, can you please state and spell your name for the record.

A.   Say that again.

Q.   Can you please state and spell your name, your full first and last name.

A.   Vincent DeLeon.  V-I-N-C-E-N-T, D-E-L-E-O-N.

Q.   Okay.  Great.  Mr. DeLeon, did you receive a copy of the deposition notice that my office sent to you two weeks ago?

A.   I received a lot of letters, but I'm not sure -- I

think -- I believe so.

Q.   Okay.  I have a copy of it open on my computer.
So let me just share my screen and show it to you, and you
just let me know if you recognize the document.  Okay?

A.   Okay.

Q.   Okay.  Mr. DeLeon, you should see on your screen
in front of you a document that's titled Defendant's Notice
of Taking Plaintiff's Deposition.

Do you see that on the screen in front of you?

A.   Yes, I see it.

Q.   Okay.  And do you recognize this document?  Do you
remember receiving it in the mail from my office?

A.   Hold on.  I think I might have it.  Let me see.

Yes, I have it right here.

Q.   Okay.  Perfect.  Then I'll stop sharing my screen.
Let's see.

A.   I do have a question that I want to get on record.

Q.   Sure.  Let me just figure out how to stop sharing
the screen first, and then we will go forward.

What is it that you want to get on the record,
Mr. DeLeon?

A.   What is the status on responding to my discovery
request?

You have -- I have yet to receive any formal
statement from you on my discovery request.  Because, from



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 16 of 40

what I know, you can't take my deposition until you respond to my request for discovery first.

Q.    Mr. DeLeon, we'll talk about any outstanding discovery responses at the end of the deposition.

But you are mistaken.  I am allowed to still take your deposition, just so you know.  Okay?

And, Mr. DeLeon, just to confirm before we go any further, you represent yourself in this lawsuit.  Correct?  You do not have an attorney who represents you?

A.    Correct.

Q.    Okay.

MR. CHAN:  And for the record, Mr. Court Reporter, we'll just mark the deposition notice that I shared with Mr. DeLeon as Exhibit No. A.

(Exhibit No. A was marked for identification.)

Q    (By Mr. Chan) All right.  Mr. DeLeon, I believe I asked you this question before we started the deposition, but just to confirm, have you ever had your deposition taken before?

A.    No.

Q.    Okay.  Well, let me just briefly explain then how the deposition will go and what the process is involved with that.  So a deposition is a question-and-answer session where I'm allowed to ask you questions, and you are required to answer those questions under oath.



There's a court reporter who is with us who is creating a transcript of my questions and your answers.  And at the end of the deposition, you will have the opportunity to request a copy of it to review if you so choose.

Do you understand?

A.   Yes.

Q.   Okay.  Now, at the beginning of the deposition, you were sworn in by the court reporter.  So this means that the testimony you're giving today is under oath and that you have the same obligation to tell the full truth as if we were in front of a judge or a jury.  You understand?

A.   Yes.

Q.   And do you agree to tell the full truth in response to my questions today?

A.   To my best ability, yes.

Q.   Now, if you refuse to answer my questions, I may call upon the Court to intervene, and I could seek sanctions which could include monetary damages and dismissal of the lawsuit.

Do you understand?

A.   Yes, I believe so.

Q.   Okay.  Now, the court reporter is typing down everything that we say, but he can't record hand gestures or head movements or nonverbal answers.  So please provide verbal answers in response to my questions today.  So no



head shakes, no hand gestures in response.

Do you understand?

A.   Yes.

Q.   It's also important that we both speak slowly, loudly, and clearly so that the court reporter can record what we say.  We are both appearing by videoconference, and the court reporter is also appearing by videoconference.  So it's important that we make sure that we are not talking over each other or not clearly speaking.  Otherwise, the court reporter can't hear what we're talking about.

Okay?

A.   Okay.

Do I get to ask you questions too?

Q.   No.  This is my opportunity to ask you questions, Mr. DeLeon.

A.   So I don't -- I don't get the chance unless you send it with discovery.  Correct?

Q.   I'm not your attorney, Mr. DeLeon, so I can't give you any further advice on what to do in your case.

Do you understand?

A.   Yes.

Q.   Okay.  Now, during this deposition, if you do not understand any of my questions, please just tell me.  I'll be happy to repeat or restate the question.  But if you do answer one of my questions, I'm going to assume that you



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 19 of 40

understood what the question was that I was asking.

Do you understand that?

A.    And how many questions are you allowed to ask me? Forty, right?

Q.    There is no limit to the number of questions that I am allowed to ask you.  I can take your deposition for a set amount of time.  Today we have four hours to take your deposition today.  Okay?

A.    Okay.

Q.    All right.  But going back to my previous question, do you understand that if you're answering any of my questions, that I'm going to assume that you understood the question?

A.    Okay.  Yes.

Q.    Okay.  And, again, if you don't understand any of my questions, please just ask me to restate or repeat it. I'll be happy to do so.

A.    Okay.

Q.    During this deposition, I'm entitled to your best estimate about the events that transpired, but please do not guess or speculate.  If you do not remember something, then please just say that.

Do you understand the difference --

A.    Well, I've got my notes here so I should be able to answer all your questions.



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 20 of 40

Q.    I'm sorry, Mr. DeLeon, could you repeat that?

A.    I said I've got my notes right here so I should be able to answer all your questions.

Q.    Okay.  I do see on my end that you are shuffling around a bunch of different papers in front of you today.  So I may ask you about those documents that you have in front of you, okay, probably later in the deposition.

A.    Okay.  Oh, you want to know about them?

Since the injury, I have a hard time remembering things, so whenever something was asked or done during the time of the incident up to today, I would take notes so that way I wouldn't forget what it was that was done.

Q.    Okay.  I understand.  And I'll probably ask you about those notes later in the deposition today.

But for now, I just want to make sure that you understand that, you know, during this deposition I'm entitled to your best estimate or recollection about the events that transpired.

So do you understand the difference when I'm saying --

A.    Yes.

Q.    -- between a guess and an estimate?

A.    Yes, I understand.

Q.    Okay.  Great.  And, Mr. DeLeon, I do understand that you have notes in front of you.  But during this



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 21 of 40

deposition, I do ask that you try to answer your -- my questions to the best of your memory today.  I understand that if -- you may not remember something.  That's fine.  If you don't remember something, just tell me.  But, you know, I'm here to ask you questions, and I'm not here to ask what you wrote down, you know.  I'm here to get your best memory of what happened.

        Do you understand?

    A.    Yeah.

    Q.    Okay.  Now, if you need a break at any point during this deposition, please just tell me, and we can take one.  But I will ask that -- if we're in the middle of a question-and-answer session and I've already asked you a question, for example, and you're in the middle of giving your answer, I ask that you finish answering my question first before we go on the break.  Okay?

    A.    I'll do my best.

    Q.    All right.  And, again, at the end of the deposition, you have the opportunity to request a copy of the transcript and make corrections for any inaccuracies. But if you do make any material changes to the transcript that are inconsistent with the answers that you give during today's deposition, the defendant is allowed to comment on that discrepancy in the future.

        So, for example, if I ask you a yes or a no



Case 1:24-cv-00234-KES-EPG   Document 65-4   Filed 05/22/26   Page 22 of 40

A.   I would say 9:35, at the same time I was being searched.

Q.   How do you know the building was being searched because someone had died?

A.   Because they tell you.

Q.   Do you remember Officer Santiago telling you that someone had been -- that someone had died in the building and that everyone was being searched?

A.   No, he didn't say that, but other inmates did.

Q.   Okay.  Do you remember who was the inmate who told you that that was happening or that was why the search was happening?

A.   I believe my neighbor Alex.

Q.   And do you remember when Alex told you this?

A.   When I came back.

Q.   Came back from where?

A.   Medical.

Q.   So Alex told you this after you had returned from medical.  When did you go to medical?

A.   I went to medical July 20, 2023.

Q.   Okay.  So Alex told you this information the same day that this incident occurred?

A.   Correct.

Q.   Okay.  So did Alex tell you about the reason behind the search after the incident had happened with



Officer Santiago?

A.   Oh, he said somebody died.  He explained it.

Q.   No.  Mr. DeLeon, my question was -- was referring to the timing.

Did Mr. Gonzalez, or Alex, did he tell you why the building had been searched, you know, after you had already had your encounter with Officer Santiago, or was this before?

A.   I feel like he just told me somebody died.  He didn't know who.  But I think as soon as my incident happened, they stopped the search.

Q.   Okay.  But, again, my question goes more to when Mr. Gonzalez told you this information.  Did he tell you this before you encountered Officer Santiago or after?

A.   No.  After.

Q.   Okay.  Now, in your complaint, in the next sentence, it says that Officer Santiago told you to do something and that you complied, and that you turned around to be escorted out of your cell.

A.   Correct.

Q.   Right?

A.   Yeah, that's how they're supposed to -- that's how they do it.  They want you to back out of your cell so they could see your hands.  And when I turned around to back out, that's when he tackled me.



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 24 of 40

Q.    Okay.  Do you remember what Officer Santiago told you to do?

It says here in your complaint that Officer Santiago told you to do something.  Do you remember what he told you to do?

A.    No.

Q.    Do you remember what you did in response to what Officer Santiago told you?

A.    I'm assuming I complied.

Q.    Okay.  But do you remember how you complied?

A.    I would have complied right away because of his reputation.

Q.    No.  But I'm asking you what did you do to comply?

Do you remember anything about -- like, did he order you to do something in particular that you did?

Or what did he say to you, and then what did you do in response?

A.    Let me see here.  He gave me a direct order to turn around and submit to flex cuffs.  I did.

Q.    Mr. DeLeon, I see that you're reading from a document again.  What document?

A.    Court package 62399.

Q.    What page is that?

A.    This is Santiago's narrative for what happened.

Q.    So you're reading from Officer Santiago's incident



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 25 of 40

report right now; is that right?

A.   Yeah.  It would be Page 1 in Exhibit No. A.

Q.   And by Exhibit No. A, you're referring to documents that you mailed to my office a few weeks ago; is that right?

A.   Yes.  Yeah, that first page.

Q.   Okay.

A.   It should say something -- yeah, that's it.  He said that I had -- that he thought I had a -- something in my mouth.

Q.   Okay.  Before we get into that, again, what I'm asking you is, you know, if you remember what order Officer Santiago gave you and then what you did in response.

Do you -- without referring to these documents, do you remember, as you sit here, what he told you to do?

A.   He told me that I had something -- that he thought I had something in my mouth.  When I sat down, he thought he saw me put something in my mouth.  But at the time I didn't have anything in my mouth so that's what I was trying to show him, was that I don't have anything.

And he insisted that he saw me put something in my mouth.  I opened my mouth.  It's all -- he told me to -- told me something about I had something in my mouth, and I told him I didn't have anything in my mouth.

And he said I was being incompetent or something



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 26 of 40

about that I was disobeying him and so he was going to escort me out to be searched.  And I turned around to be escorted out backwards, and he tackled me.

Q.   Okay.  Let's go into that a bit.  So, again, you're looking at these documents, but is this something that you remember happening, that Officer Santiago told you this and that you told him -- and that that's how you responded?

A.   At the time, yes, this is everything and how I responded.  I didn't give him any hustle.  I tried to tell him I didn't have anything in my mouth, and he was taking me to go get searched.  I turned around, and everything is hazy from there on.

Q.   Okay.  Did Officer Santiago tell you to open your mouth?

A.   Yes, I believe so.

Q.   And did you --

A.   And I did.

Q.   You opened your mouth in response to his question?

A.   I believe so.  I believe in the video it shows me opening my mouth, and I'm telling him I don't have anything in my mouth.  And he's insisting that he saw something.  And when I turned around, that's when he attacked me.

Q.   Okay.  Do you remember telling Officer Santiago that you did not have anything in your mouth?



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 27 of 40

A.    At the time, yes.

Q.    Okay.  So let me just summarize what your allegations are.  You tell me if I'm summarizing inaccurately or not.  Okay?  I just want to make sure I understand the timeline of events.

So at about 9:35 a.m., Officer Santiago came to your cell and kicked on the door to wake you up.  Right?

A.    Correct.

Q.    And you're saying that you were asleep at that point, until Officer Santiago woke you up; is that right?

A.    Correct.

Q.    And then Officer Santiago told you to come to the cell door and, you know, turn around and be placed in flex cuffs, and you submitted to that.  Right?

A.    Yes.

Q.    Okay.

A.    Before the door was opened, I was in flex cuffs.

Q.    Before the door was opened, he had already placed you in flex cuffs.  Okay.

And then after you came out of the cell, Officer Santiago told you to open your mouth and to take out whatever might have been hiding in your mouth.  But you told him that you didn't have anything, and you obeyed his order to open your mouth; is that right?

A.    Yes.



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 28 of 40

Q.    Okay.  And then after you had complied with that order, then you turned around, and then at that point Officer Santiago tackled you?

A.    Correct.

Q.    Okay.  Before -- I have more questions to ask about what happened when he tackled you but just going back a bit to while you were inside of the cell.

While you were inside of your cell, after Officer Santiago had woken you up, did you place anything inside your mouth before you came to the cell door?

A.    Maybe food.  Maybe I was eating something, because the pills I take give me dry mouth.  May I drank some water.  I'm not sure.  But if I did, it would be probably food.

Q.    Okay.  And what food do you keep inside of your cell?

A.    Candies, Pop-Tarts, peanuts.  Just something real quick to get the film out of my mouth, if I don't have -- if I'm not able to brush my teeth or use mouthwash.  At the time I don't think I had mouthwash.

Q.    Okay.  So after Officer Santiago woke you up, you decided to have a snack then; is that right?

A.    To get the film out of my mouth.  I do it every morning.

Q.    Okay.  Did you swallow that food before you came to the cell door?



Case 1:24-cv-00234-KES-EPG   Document 65-4   Filed 05/22/26   Page 29 of 40

A.    Yeah.

Q.    Okay.

A.    There was nothing in my mouth.

Q.    Okay.  So in this incident report that Officer Santiago prepared, that you're referring to as Page 1 under your Exhibit A of the documents that you sent over to my office, when Officer Santiago says that you had contraband in your mouth, that's incorrect; is that right?

A.    That's incorrect.

Q.    Okay.

A.    I even showed him what -- when I opened my mouth and I tried to tell him I didn't have anything.  He insisted he saw something, and then he called the CO over.  I turned around to be escorted out backwards, and that's when I got hurt.

Q.    Okay.  And, again, just to confirm, you actually told Officer Santiago you didn't have anything in your mouth.  You told him this, and then he disregarded that; is that right?

A.    Correct.  On the video, I saw I was sitting there and he said:  Let's see what you have in your mouth.

And I'm over there:  I don't have anything.  And I opened up my mouth.  And he's insisting there's something.

But when I turned around to be escorted out backwards, that's when that happened.



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 30 of 40

Q.   So then in your complaint, you allege that Officer Santiago tackled you; is that right?

A.   Well, in the video, it shows him shoving me.  It shows him hyperextending my hands and then shoving me over the toilet.

Q.   Okay.  But in your complaint, you wrote that he tackled you; is that right?

A.   At the time I thought he did.  That was before I could see the video.

Q.   Okay.  What did -- how did Officer Santiago's contact feel from behind?  What made you believe that he was tackling you?

A.   Just the force, I guess.

Q.   So you believed that Officer Santiago was tackling you just from the amount of force that he was pushing against you?

A.   Correct.

Q.   Okay.  Now, again, Mr. DeLeon, you're 6 foot 3; is that right?

A.   I believe so.

Q.   Okay.  And do you remember how -- what your weight was back in July of 2023?

A.   I mean, I can tell you what it is now.  Two sixty --

Q.   I see that you're flipping through some pages



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 31 of 40

right now.  But, really, I'm asking you what you remember, Mr. DeLeon.

Do you remember what your weight was back in 2023, or do you not remember?

A.   I don't remember how much I weighed, no.

Q.   Okay.

A.   I couldn't tell you the exact weight.

Q.   Okay.  And after Officer Santiago tackled or pushed you, what happened next?

A.   Like I said, I don't -- everything is hazy from that point on.

Q.   Okay.  So you don't remember anything after that point, after Officer Santiago pushed you?

A.   I didn't say that.  I said everything is hazy.

Q.   Okay.  Well, then what do you remember --

A.   I don't want to give a false narrative.

Q.   Okay.

A.   Oh, in the day room on the bench, with COs, nurses around me, a towel was placed on my head to try to stop the bleeding.

Q.   You're looking at your amended complaint again; is that right?

A.   Correct.

Q.   Okay.  In your amended complaint, you also stated that you were knocked unconscious; is that right?



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 32 of 40

A.   Correct.  It should say in the medical report of Incident 213.  It states that -- post-concussion, and I was unconscious for a time on one of them.

Q.   Okay.  So then Officer Santiago pushed you, you lost consciousness, and then you woke -- when you woke up, where you recovered, you were laying on a bench in the day room?

A.   Sitting.

Q.   Sitting in the day room.

It says in your complaint that your head hit the bottom of the bunk.  Do you remember your head hitting the bottom of the bunk?

A.   No.  I remember -- remember stars.

Q.   Okay.  And so if you don't remember hitting your head on the bottom of the bunk, why did you write that here in your complaint?

A.   Because that's where the blood was.

Q.   Okay.  So after you had recovered and you were sent back to your cell, you saw that there was still blood on the bottom bunk of your cell?

A.   All over the wall too.  The wall and the bunk.

Q.   Okay.  So there was still blood in your cell at the time you came back to your cell?

A.   Correct.

Q.   Okay.  And so based off of, you know, you seeing



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 33 of 40

the blood on the bottom bunk bed, that's what led you to believe that you hit your head on that bottom bunk; is that right?

A.    No.    Actually, through his breast cam, you can see it clearly.

Q.    Okay.    So then did you prepare this document after you had reviewed Officer Santiago's body camera footage?

A.    No, not this one.

Oh, yeah, this one.    Yeah.

You're talking about the civil rights, right?

Q.    Yes.

A.    Yes.    Yes, I did.

Q.    Okay.    Okay.    So you hit your head on the bottom of the bunk, you lost consciousness, and when you woke up, you were sitting on a bench in the day room being treated by nurses; is that right?

A.    I was sitting in the day room on a bench -- while I was in the day room on a bench with COs, nurses around me, a towel was placed on my forehead to try to stop the bleeding so, yes.

Q.    Okay.    And when you're -- that part where you're talking about the towel placed on your forehead to try to stop the bleeding, you were reading that from your complaint again; is that right?

A.    Yes.    That's -- the complaint is to the best of my



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 34 of 40

knowledge at the time when I wrote it.

Q.    Okay.  What happened afterwards?

A.    Sorry?

Q.    What happened after you regained consciousness on the bench?  You know, what happened next?

A.    I received 10 stitches.

Q.    Where did you receive the 10 stitches?

A.    Right there.  See the picture?

Q.    I see you holding up a picture to the camera.  But I'm actually asking you where in the prison you received those stitches.

A.    I'm assuming medical, where they do -- where the doctors are.  Right?

Q.    Okay.  Well, I'm not asking you to assume.  I'm asking you what you remember.

Do you remember where you received those stitches?

A.    It's kind of hard to say.  I mean, I was in a doctor's hospital.

Q.    No.  I understand.  And, again, that's why I'm asking.  I'm trying to figure out what you remember and what you don't remember.  So if you don't remember where you got the stitches, that's fine.

A.    I barely remember that day, but everything is written down so that way the memory could be stored.

Q.    No.  I understand that, Mr. Santiago.  No, not



Q.    Okay.

A.    And maybe the other two inmates that had a dealing with Santiago, and if I could get a response for my -- from my requests for discovery, I can know any other inmates that have had run-ins with Santiago and had filed 602s against him.  And I might want to call them to find out what exactly they -- what kind of incident they dealt with with Santiago, when they did their 602, if they're willing to.

Q.    Okay.  Well, Mr. DeLeon, we're reaching the end of the deposition.  I just have a few closing questions for you.

Do you understand that this entire time during this deposition that you've been under oath?

A.    Yes.

Q.    That means that you had the obligation to tell the full truth as if you were in open court?

A.    I understand that.  I tried to tell you everything to the best of my ability.  I might have got some things wrong, but, if I'm able to, I could re- -- if you have any questions about something that you weren't a hundred percent sure about, you could re-ask me and ask me, you know, that I understand and then I could answer you to the best of my ability.

Q.    Okay.  So then during your deposition today, have you been answering all my questions as truthfully and to the



Case 1:24-cv-00234-KES-EPG   Document 65-4   Filed 05/22/26   Page 36 of 40

best of your ability as you have been able to?

A.   Yeah.

Q.   Okay.  Were there any --

A.   But I believe --

Q.   Sorry.  Go ahead.

A.   What?

Q.   Go ahead.  Please finish.

A.   But I believe the answers were too because I did them to the best of my ability.  So, yes, if I was just to answer your question.

Q.   Okay.  Are there any answers to any of my questions that you would like to go back and change now before we close this deposition out?

A.   I wouldn't remember right here, right now.  I just wrote down questions.

Can you tell me what -- after my cellie took the blame, RVR, you were going to show me another one, but I never -- I never got to find out what that RVR was about, something about --

Q.   Are you referring to the RVR for drug paraphernalia possession?

A.   Yes.

Q.   Okay.  I believe I showed it to you on your screen.  I can show it to you again.

A.   Okay.



Q.    Is that what you're asking for?

A.    Okay.  Can I just get the log number?

Q.    Okay.  Hold on while I open it back up.

A.    And the log number for the alcohol in 2019 RVR. Because those are so long ago, I don't remember the outcome, and I don't remember exact details, so I would like to understand what -- what was done.

Q.    Okay.  The first Rules Violation Report related to your possession of alcohol from October 17, 2019.  The log number for that rules violation report is 6923442.

A.    Okay.

Q.    And then the other Rules Violation Report that I had referenced was the one you received February 7th, 2018. That log number is 4411725.

A.    2018.  I thought you said 2017.

Q.    I was mistaken.  The document is dated February 7th, 2018.  So if I said 2017, then --

A.    Okay.  And what was the third one?

I need the log number for the 2018 one, but there was a third one you showed that went by really quick.  I wasn't able to write anything down.

Q.    The first Rule Violation Report I showed you was the one prepared by Officer Santiago.  The second one was the one related to the possession of alcohol.  The third one was the one related to the drug paraphernalia possession.



There wasn't one after that one.

A.    What was the log number for the drug paraphernalia?

Q.    That is the one that ended in 4411725.

A.    Okay.

And are you sure there wasn't another one?

Q.    As far as I recall asking you about, those are the only ones I identified.

A.    Okay.

Q.    All right.  Mr. DeLeon, again, is there any answer to any of my questions you would like to change now before we stop the deposition?

A.    Not to my knowledge.  I answered to the best of my knowledge.  If I got something wrong, let me know.

Q.    Okay.  Is there any other information that you -- we didn't go over about allegations against Officer Santiago that you think we should talk about or discuss before the deposition ends?

Again, this is your chance to tell your story.  I just want to make sure I have a full understanding of what you're claiming.

A.    My story's right here, everything that I gave you. Anything else I went off of what I thought, but I can't be sure about all these questions that you asked.  I can only go by what I have read, and some of these questions I don't



Case 1:24-cv-00234-KES-EPG    Document 65-4    Filed 05/22/26    Page 39 of 40

remember.  So I answered them to what I believe happened, but I'm not a hundred percent sure.  So some of these questions I'm not 100 percent sure if I was able to tell the whole truth because I don't know the whole truth.  I would have to go back to look at my records.

So is there anything that you're thinking I should look back on?

Q.   No.  I'm asking you about, as we sit here today, if there's anything you want to add.

A.   No.  Everything I have to add I've already written to you, sent to you guys, and give you the report.  If there's something that I missed, let me know.

Q.   Okay.  All right.

MR. CHAN:  Mr. DeLeon, then that's it for your deposition today.  We'll go off the record now.

(Deposition concluded at 11:28 a.m.)

--0o0--

C E R T I F I C A T E

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me via videoconferencing at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript was requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  April 9th, 2026.

JOHN FAHRENWALD

CA CSR 14369

