ROB BONTA, State Bar No. 202668
Attorney General of California
TYLER V. HEATH, State Bar No. 271478
Supervising Deputy Attorney General
BRIAN S. CHAN, State Bar No. 299926
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-7368
 Fax:  (916) 324-5205
 E-mail:  Brian.Chan@doj.ca.gov
*Attorneys for Defendant Santiago*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **VINCENT DELEON,**<br><br>                                              Plaintiff,<br><br>            v.<br><br>**PHILLIPS, et al.,**<br><br>                                              Defendant. | 1:24-cv-00234 KES EPG (PC)<br><br>**DECLARATION OF S. SANTIAGO IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, S. Santiago, hereby declare:

1.    I am a California Department of Corrections and Rehabilitation (CDCR) Correctional Officer currently working at California Substance Abuse Treatment Facility (SATF), located in Corcoran, California.  I have been a Correctional Officer at SATF since 2017.  I have personal knowledge of the facts set forth in this declaration.  I am competent to testify to the matters set forth in this declaration, and if called upon by the Court, I would do so.

2.    On July 20, 2023, I was assigned to work at SATF as a Facility D Security Escort Officer.  My duties as a Security Escort Officer included conducting safety and security checks in Facility D, and also performing searches of housing units and inmates for any contraband.

1

3.    On July 20, 2023, at approximately 9:35 a.m., I was assisting other correctional officers with a mass search of Building 4 in Facility D, which is also the unit where Plaintiff Vincent DeLeon was housed on that date.  To the best of my recollection and understanding, correctional officers were performing a mass search of Building 4 on that date to locate any illicit substances, as several inmates in that building had recently suffered overdoses.

4.    Early into the mass search of Building 4, I approached Plaintiff DeLeon's cell, Cell 104, and I instructed Plaintiff to wake up and turn on the lights because we (the officers) were conducting cell searches for the building and that he would need to come out of his cell.  After Plaintiff stood up from the bottom bunk and turned on the light, I ordered Plaintiff to submit to an unclothed body search and to hand me his clothes for inspection.  Plaintiff complied and handed me his clothes through the cell door's food port, and I performed a search of Plaintiff's clothing that found no weapons or contraband.

5.    After I handed Plaintiff back his clothes, and after Plaintiff dressed and returned to the lower bunk, I continued to visually monitor Plaintiff for any suspicious activity.  I then observed that Plaintiff picked up an unknown object near where he was sitting on the lower bunk.

6.    I then ordered Plaintiff to then turn around and submit to flex cuffs.  As Plaintiff was turning towards the food port, I observed Plaintiff reach inside his left side short pocket, retrieve an unknown object with his left hand, bring the unknown object up towards his facial area, and when his hand came back down, he no longer had the object in his hand.

7.    Once Plaintiff had his hands placed in flex cuffs behind his body, I asked the control booth officer to open Cell 104.  As Plaintiff stood at the threshold of the cell, I observed that Plaintiff appeared to have something inside of his mouth.  I gave Plaintiff a direct order to open his mouth and stick out his tongue, which he obeyed.  When I then ordered Plaintiff to lift his tongue up, Plaintiff closed his mouth in what appeared to me to be an attempt to move what he had under his tongue to the top of his mouth.  Plaintiff then reopened his mouth, and as he lifted his tongue, I observed an unknown object inside of his mouth that appeared to be a "bindle."  In prison, the term "bindle" is used to describe a small package or bundle that is commonly used to

2

conceal drugs.  I gave Plaintiff a direct order to spit out the "bindle" he had in his mouth, and Plaintiff refused to obey that order.

8.    After placing my right hand on Plaintiff's right forearm, I turned and advised Sergeant Saucedo, who was standing nearby, that Plaintiff might have a "bindle" in his mouth. As I turned my attention back to Plaintiff, Plaintiff attempted to pull away from my grip by bending at the waist and in a lunging motion turned his body counterclockwise back towards the toilet inside of his cell.

9.    When Plaintiff suddenly moved and turned, I immediately became afraid for my own physical safety because I did not know Plaintiff's intentions.  Given Plaintiff's apparent attempt to hide contraband inside of his mouth, I did not know if Plaintiff also had a weapon on his body or in his cell and was turning to retrieve the weapon.  Additionally, at the time of the incident, I was approximately five-foot-three in height and weighed about two-hundred-and-fifteen pounds. In contrast, Plaintiff appeared to be over six feet in height and appeared to weigh much more than me.  Even though Plaintiff was still flex-cuffed behind his back, I was still afraid for my own physical safety because Plaintiff's greater height and body weight would allow him to break free from my hold on his right arm.  Once Plaintiff was free from my physical hold, he could still seriously injure me or others if he turned and charged at me or other nearby officers.

10.   In response to Plaintiff's sudden movement and turning his body, and based on my concern for my own physical safety and the safety of others, I immediately used both of my hands and my body weight to push Plaintiff forward and into his cell.  Plaintiff then appeared to lose his balance, trip over the toilet bowl, and fall towards the bottom bunk.  Due to my surprise and my attempt to regain my own footing after pushing Plaintiff, I was unable to see if Plaintiff struck anything during his fall.  When I used force to push Plaintiff back into his cell, my goal for using that force was to create some distance between Plaintiff and myself, and to contain Plaintiff within his cell; I did not use force on Plaintiff with the goal of having him hit his head or suffer any other serious injury.

11.   Responding staff then arrived and assisted me with taking Plaintiff into custody.  As we helped Plaintiff back up onto his feet and attempted to escort him out of the cell, Plaintiff

3

physically resisted being led out and instead bent his head and body towards the toilet again. Plaintiff appeared to use his head to press the toilet's flush button in order to flush the unknown object he had hidden inside of his mouth down the toilet. Plaintiff was then escorted outside of his cell to one of the tables in the day room, where I observed Plaintiff appeared to have a laceration in the middle of his forehead that was actively bleeding. Medical staff were immediately notified about Plaintiff's injury, and once an Emergency Response Vehicle arrived at the building, another correctional officer escorted Plaintiff out of the building to the Triage and Treatment Area.

12.    During the July 20, 2023 incident with Plaintiff, I was wearing a body-worn camera that recorded audio and video footage of the incident after the point where Plaintiff was placed in flex cuffs. I have reviewed a copy of the relevant footage retrieved from my body-worn camera, which is attached to my counsel's declaration as Exhibit A (file name "D SEC PAT 2 244410," approximately 50 seconds in length). I have personal knowledge of the matters and circumstances depicted in this video file, and the video accurately captures and depicts the events that occurred and that I experienced during the incident with Plaintiff on July 20, 2023.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed: May _13_, 2026 at Corcoran, California.

S. Stantiago

SA2024305582
39843736

4