UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VINCENT DELEON,

Plaintiff,

v.

SANTIAGO, et al

Defendants.

No. 1:24-cv-00234-KES-EPG (PC)

FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ON THE FOLLOWING CLAIMS: (1) EIGHTH AMENDMENT EXCESSIVE FORCE AGAINST DEFENDANT SANTIAGO; (2) EIGHTH AMENDMENT FAILURE TO INTERVENE AGAINST DEFENDANT SALCEDO; (3) FOURTEENTH AMENDMENT DUE PROCESS AGAINST DEFENDANTS LT. ERVIN, SHERMAN, RODRIGUEZ, HERMANN, AND BARRIOS: (4) VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT AGAINST DEFENDANTS SANTIAGO AND SALCEDO; AND (5) CALIFORNIA STATE LAW BATTERY CLAIM AGAINST DEFENDANT SANTIAGO; AND ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED

(ECF No. 71)

OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS

## I. INTRODUCTION

Plaintiff Vincent DeLeon is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on February 26, 2024. (ECF No. 1). Plaintiff alleged excessive use of force at California Substance Abuse Treatment Facility (CSATF).

On February 13, 2026, Plaintiff filed a motion for leave to file a further amended complaint and lodged the proposed amended complaint with the Court. (ECF Nos. 56 and 57). Plaintiff sought to add previously dismissed Defendant Warden Bryan Phillips, as well as eight additional defendants: Correctional Officer N. Bonilla, Correctional Officer I. Rodriguez, Correctional Lieutenant J. Ervin, Correctional Captain J. Sherman, S. Rodriguez, Correctional Sergeant J. Herrmann, Correctional Lieutenant J. Barrios, and CDCR. Plaintiff also sought to add twelve additional claims for various violations. On March 12, 2026, the district judge granted Plaintiff's motion to file an amended complaint and referred the matter to the undersigned for screening of the amended complaint. (ECF No. 70).

Now before the Court for screening is Plaintiff's second amended complaint[1]. (ECF No. 71). Upon review, the Court shall recommend allowing the following claims to proceed past screening: (1) Eighth Amendment excessive force against defendant Santiago; (2) Eighth Amendment failure to intervene against defendant Salcedo; (3) Fourteenth Amendment due process violation against defendants Lt. Ervin, Sherman, Rodriguez, Hermann, and Barrios; (4) violation of the Tom Bane Civil Rights act against defendants Santiago and Salcedo; and (5) California state law Battery claim against defendant Santiago. However, the Court shall recommend that the following claims be dismissed: (1) Eighth Amendment failure to train, supervise, and discipline against supervisory defendants; (2) Fabrication of evidence/filing false reports against defendants Santiago, Salcedo, Bonilla, and Rodriguez; (3) First Amendment retaliation against defendants Santiago and Lt. Ervin; (4) Civil rights conspiracy and failure to prevent conspiracy against all defendants; (5) California state law claim of intentional infliction of emotional distress against all defendants; (6) California state law claim of defamation against defendants Santiago, Salcedo, Bonilla, and Rodriguez; and (7) vicarious liability against defendant CDCR.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a

[1] Plaintiff has titled his amended complaint as "Third Amended Complaint." However, as the operative complaint in this action is the First Amended Complaint (ECF No. 11), an amended complaint would be the Second Amended Complaint.

governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Because Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915(e)(2)(B)(i-iii), which directs the Court to dismiss a case at any time if the Court determines that it is frivolous or malicious, fails to state a claim, or seeks relief against an immune defendant.

## III. PLAINTIFF'S SECOND AMENDED COMPLAINT

In his second amended complaint, Plaintiff sues ten defendants: (1) correctional officer Steven Santiago; (2) correctional sergeant I. Salcedo; (3) correctional officer N. Bonilla; (4) correctional officer I. Rodriguez; (5) correctional lieutenant J. Ervin; (6) correctional captain J. Sherman; (7) S. Rodriguez; (8) correctional sergeant J. Herrmann; (9) correctional lieutenant J. Barrios; and (10) California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff states the incident occurred at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. (ECF No. 71 at 2-6).

Plaintiff alleges the following: On July 20, 2023, defendant Santiago entered his cell to conduct a search of the cell. (*Id.* 7). As defendant Santiago entered the cell, Santiago directed Plaintiff to open his mouth because Santiago claims he saw Plaintiff "retrieve a bindle" from the bunk and place it in his mouth. (*Id.*). Santiago then slammed Plaintiff's head into a metal bunk while Plaintiff was restrained with his hands behind his back. As a result, Plaintiff suffered a large gash requiring stiches and a traumatic brain injury resulting in "permanent cognitive impairment." (*Id.*) Plaintiff claims that I. Salcedo was present during the incident and failed to intervene. (*Id.* at 12).

Plaintiff represents that following the attack, defendant Santiago and the other defendants engaged in a conspiracy to "cover-up" the use of force by filing false official reports regarding the July 20, 2023, incident that corroborated defendant Santiago's false narrative and helped cover up the excessive force. (*Id.* at 8). Sergeant I. Salcedo was the immediate supervisor present during

the incident who also filed a false report. N. Bonilla and I. Rodriguez both filed false reports regarding the incident. Plaintiff claims these reports were coordinated to provide a consistent "false narrative" that would justify the use of force. (*Id.*).

In furtherance of the alleged "cover-up," Plaintiff states defendant Santiago filed a false RVR, stating Plaintiff was resisting. Plaintiff states that Lieutenant J. Ervin was the incident Commander and was responsible for investigating both the use of force and the retaliatory Rules Violation Report ("RVR") made by Santiago and that he failed to adequately investigate the incident and subsequently discipline Santiago. (*Id.* at 8-9). In the subsequent RVR proceedings, Plaintiff states he was denied assistance, the ability to call witnesses, and the opportunity to question or confront Santiago.

Regarding the supervisory defendants--Captain J. Sherman, the Facility D Commander, S. Rodriguez, Sergeant J. Herrmann, and Lieutenant J. Barrios--Plaintiff states all were involved in the adjudication of the RVR investigation and ratified Santiago's conduct by failing to take appropriate "corrective action." (*Id.* at 9).

Plaintiff further claims that Santiago had an extensive history of misconduct, including prior findings that "he tampered with evidence to cause a false positive urine analysis test result in order to maliciously implicate an inmate." (*Id.* at 10). Because of this alleged history of misconduct, Plaintiff alleges that the supervisory defendants failed to adequately train, supervise and discipline Santigo and as a result, were directly and proximately the cause of Santiago's alleged excessive force. (*Id.* at 11).

Finally, Plaintiff claims Warden Phillips ratified the constitutional violations by approving the biased investigation and RVR adjudication despite the obvious conflicts of interest and due process violations. (*Id.* at 10-11).

## IV. ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

### a. Excessive Force

Plaintiff's first cause of action is Excessive Force in Violation of the Eighth Amendment. (ECF 71 at 12).

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places

restraints on prison officials, who may not … use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-*faith* effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

In Plaintiff's second amended complaint, Plaintiff alleges he was restrained with his hands behind his back when Defendant Santiago slammed his head into a metal bunk. Liberally construing these facts, the Court recommends finding that Plaintiff may proceed on his Eighth Amendment excessive force claim against defendant Santiago.

**b. Failure to Intervene/Protect**

Plaintiff's second amended complaint next asserts an Eighth Amendment failure to intervene claim against Defendant Sgt. Salcedo.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones . . . . " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). Among other things, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Id.* (citation omitted). To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety. *Id.* at 837.

"'Deliberate indifference' has both subjective and objective components." *Labatad v.*

*Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at 1160 (quoting *Farmer,* 511 U.S. at 847).

Neither negligence nor gross negligence warrant liability under the Eighth Amendment. *Farmer,* 511 U.S. at 835-36 & n4. An "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)).

Plaintiff's second amended complaint alleges that Defendant Salcedo was present during Defendant Santiago's use of excessive force and failed to intervene to protect Plaintiff. The Court thus recommends that Plaintiff's Eighth Amendment failure to intervene claim against defendant Salcedo proceed past screening.

**c. Failure to Train, Supervise, and Discipline against supervisory defendants**

Plaintiff alleges a claim for failure to train, supervise and discipline against the supervisory defendants.

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676–77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of

constitutional rights and is the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In order to prevail on a failure to train claim, a plaintiff must prove that training was inadequate, and that the inadequacy of training was the result of a "deliberate" or "conscious" choice on the part of the trainer. *Canell v. Lightner,* 143 F.3d 1210, 1213–14 (9th Cir.1998). As with a traditional tort, there must also be a causal connection between the failure to train and the ultimate deprivation of rights.

Under a theory of failure to discipline, "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.' " *Sheehan v. City & Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014) (quoting *Christie*, 176 F.3d at 1239), *rev'd on other grounds*, U.S. 135 S.Ct. 1765 (2015). Neither a policymaker's mere knowledge of, nor the policymaker's mere refusal to overrule or discipline, a subordinate's unconstitutional act suffices to show ratification. *Christie*, 176 F.3d at 1239.

Finally, an Eighth Amendment claim for failure to supervise has two elements: (1) a plaintiff must demonstrate that he was incarcerated under conditions which posed a substantial risk of serious harm and (2) a plaintiff must also show that the supervisor knew of and disregarded an excessive risk to inmate health or safety. *Doe v. Hill,* No. EDCV21769JGBSPX, 2022 WL 2102950 (C.D. Cal. Feb. 9, 2022), *citing Farmer,* 511 U.S. at 834, 837.

In Plaintiff's cause of action for supervisor liability, Plaintiff alleges that "Defendant Warden Bryn Phillips had personal knowledge of Defendant Santiago's extensive documented history of misconduct, including the specific finding that Santiago tampered with evidence to frame an inmate. Despite this specific knowledge, Defendant Phillips fail[ed] to terminate Santiago or implement any corrective training or supervision, which constituted deliberate indifference to the safety and constitutional rights of inmates, including Plaintiff." (ECF No. 71 at 13-14). Plaintiff also claims that Defendant Phillips ratified the conduct of other defendants by approving the results of the disciplinary process, and that "[t]he other supervisory Defendants—Lt. Ervin, Capt. Sherman, Sgt. Salcedo, Sgt. Hermann, and Lt. Barrios—also knew or should have known of Santiago's propensity for misconduct and failed to act." (ECF No. 71 at 14).

Reliance on a ratification theory for failure to investigate or discipline a subordinate is generally insufficient to support a claim without notice of prior incidents or "something more than a failure to reprimand. *Bordegaray v. Cnty. of Santa Barbara*, 2016 WL 7223254, at *11 (C.D. Cal. Dec. 12, 2016) (concluding that the "failure to investigate a subordinate's discretionary decisions and failure to discipline the subordinate" did not show ratification); *see also Est. of Adkins, by & through Adkins v. Cnty. of San Diego*, 384 F. Supp. 3d 1195, 1206 (S.D. Cal. 2019) (noting that under a ratification theory of supervisory liability, "Plaintiff must provide evidence of *affirmative or deliberate* conduct by the policymaker that amounts to a ratification of the subordinate's conduct") (emphasis added) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)). Cases involving supervisory inaction following subordinate misconduct require a plaintiff to demonstrate facts a supervisor had knowledge of "pervasive and widespread conduct posing an unreasonable risk of constitutional injury before supervisory liability can attach." *Pauu v. Cnty. of San Diego*, 2024 WL 2980793, at *9 (S.D. Cal. June 13, 2024) (dismissing supervisory liability claims where plaintiffs do not allege "specific facts supporting a fair inference that the [supervisors] had the requisite knowledge of prior incidences that would put them on notice of deficiencies in the training, supervision, or discipline.").

Plaintiff's second amended complaint fails to state a claim based on supervisory liability under the case law cited above. Plaintiff's second amended complaint does not allege that any of the supervisors participated in the alleged deprivation of constitutional rights—i.e., the use of force by Defendant Santiago. Nor does Plaintiff allege that the supervisory defendants knew that Defendant Santiago would use force and failed to prevent him from doing so. While Plaintiff alleges that Defendant Santiago "had an extensive and documented history of misconduct," this allegation is conclusory and fails to establish that the supervisory defendants knew Defendant Santiago would use excessive force against Plaintiff and failed to prevent it. Additionally, this allegation does not sufficiently claim that Defendant Santiago's alleged history of misconduct included a history of excessive force similar to this one, which would put supervisors on notice of a substantial risk of constitutional injury. These allegations are not sufficient to show, even if true, that any of the supervisory defendants knew of and disregarded an excessive risk to inmate health or safety. Nor are these allegations sufficient to allege a causal connection between

defendant Santiago's prior conduct and the alleged constitutional violation of excessive force.

Additionally, Plaintiff's second amended complaint fails to allege that the supervisory defendants implemented a policy that was a repudiation of constitutional rights and was the moving force behind the violation.

For these reasons, Plaintiff has failed to state a cognizable claim for failure to train, supervise or discipline under the Eighth Amendment.

**d. Fabrication of Evidence/Filing False Reports**

Plaintiff's fourth cause of action is for "Fabrication of Evidence/Filing False Reports" against defendants Santiago, Salcedo, Bonilla, and Rodriguez.

The filing of a false rules violation report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (internal citation omitted.); *Harper v. Costa*, 2009 WL 1684599, at *2–3 (E.D. Cal. June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California...have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for her exercise of a constitutional right and (2) when the prisoner alleges that she was not afforded procedural due process in a proceeding concerning the false report. *See Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials

provide the prisoner with procedural due process protections); *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections...."); *see also Ellis v. Foulk*, No. 14–cv–0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from the arbitrary action of prison officials lies in 'the procedural due process requirement[ ]....' ") (quoting *Hanrahan*, 747 F.2d at 1140).

Additionally, in the criminal context and in the context of certain administrative proceedings, deliberately false allegations can give rise to a due process claim where there was a resulting deprivation of liberty. *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (*en banc*) ("[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."); *Costanich v. Dep't of Soc. & Health Servs*., 627 F.3d 1101 (9th Cir. 2010) (denying summary judgment on a fabrication of evidence claim against a defendant based on evidence that the defendant falsified evidence that was used in an administrative proceeding, and which led to the revocation of Plaintiff's foster care license and loss of guardianship of two minor children).

Under these standards, the Plaintiff has failed to state a cognizable claim for allegedly filing false reports. While the Court will separately analyze Plaintiff's claims for retaliation and lack of procedural due process, Plaintiff's separate claim for filing false reports based on a "false narrative to justify the excessive force used against Plaintiff" fails to state a claim under these legal standards. Plaintiff does not allege that fabricated evidence was used against him in any criminal proceedings. Moreover, as described above, Plaintiff's rights regarding disciplinary RVRs in the prison context are grounded in the First Amended right against retaliation and Fourteenth Amendment right to procedural due process.

Thus, the Court recommends dismissing Plaintiff's Fourth Cause of Action for Fabrication of Evidence/Filing False Reports against Defendant Santiago, Sgt. Salcedo, Bonilla, and Rodriguez.

**e. First Amendment Retaliation**

The Fifth Cause of Action in Plaintiff's Second Amended Complaint is for First Amendment Retaliation against Defendants Santiago and Lt. Ervin.

A plaintiff may state a § 1983 claim for a violation of his First Amendment rights due to retaliation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69) (emphasis in original).

In this cause of action, Plaintiff claims that "Defendant Santiago filed the false and malicious RVR against Plaintiff in retaliation for being the victim of Santiago's excessive force and for Plaintiff's anticipated grievances and legal action," and that "Defendant Lt. Ervin conspired with Santiago to prosecute the retaliatory RVR and to deny Plaintiff due process in the disciplinary proceedings." (ECF No. 71 at 15).

These allegations fail to state a claim under the First Amendment. Notably, Plaintiff does not allege that the RVR accusing Plaintiff of "Willfully Resisting a Peace Officer in the Performance of Duties" was filed in response to any constitutionally protected conduct, such as Plaintiff filing grievances. On the contrary, Plaintiff alleges that "[t]he RVR was filed to justify the unjustified use of force and to retaliate against Plaintiff for being the victim of Santiago's assault." (ECF No. 71 at 8). However, being the victim of assault is not protected conduct under the First Amendment. Moreover, Plaintiff's second amended complaint does not allege anything Defendants Santiago or Ervin said or did that connected the RVR with any conduct protected by

the First Amendment, such as filing grievances or bringing legal claims.

The Court thus recommends dismissing Plaintiff's Fifth Cause of Action for Retaliation in violation of the First Amendment.

**f. Due Process**

Plaintiff's Sixth Cause of Action is for "Due Process Violations" against Defendants Ervin, Sherman, Rodriguez, Herrmann and Barrios. (ECF No. 71 at 15).

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Additionally, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum procedural protections prison officials must provide an inmate facing disciplinary charges are: (1) a written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action; (3) the right for the inmate to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; and (4) assistance where the issues presented are complex or the inmate is illiterate. *See id.* at 564-70. "Some evidence" must also support the hearing officer's decision, and the evidence must have some indicia of reliability. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *accord Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is minimally stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455-56.

Liberally construing these facts for the purposes of screening, the Court finds that Plaintiff has sufficiently alleged a due process violation.

As an initial matter, Plaintiff alleges he was not provided assistance from an investigative employee and staff, however, as the as the Supreme Court has held, an inmate is only entitled to "assistance where the issues presented are complex or the inmate is illiterate." Plaintiff fails to allege the issues presented were complex, and from Plaintiff's description of the issue, they do not appear to be complex. Moreover, Plaintiff does not allege that he is illiterate.

However, Plaintiff's allegation that he was not allowed to question Santiago or to call witness is sufficient to state a due process claim under the legal standards set forth above.

The Court next turns to whether Plaintiff has alleged that the named defendants caused the alleged violation of due process. Plaintiff states that "Defendants Lt. Erving Capt. Sherman, S. Rodrigues, Sgt. Herrmann, and Lt. Barrios were involved in the adjudication of the RVR and participated in the denial of Plaintiff's due process rights." (ECF No. 71). Plaintiff's second amended complaint does not provide further explanation as to their role in the RVR process.

While Plaintiff's description of their role in the process is largely conclusory, liberally construing Plaintiff's second amended complaint, the Court recommends allowing Plaintiff to proceed on his Sixth Cause of Action for violation of Plaintiff's Fourteenth Amendment due process rights against Defendants Ervin, Sherman, Rodrgiuez, Hermann, and Barrios.

**g. Conspiracy and Failure to Prevent Conspiracy**

Plaintiff's Seventh Cause of Action is for Civil Rights Conspiracy, and Plaintiff's Eighth Cause of Action is for Failure to Prevent Conspiracy. (ECF No. 71 at 16).

To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County*, *Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin*, 312 F.3d at 441 (quoting *United Steelworkers of Am. v. Phelps Dodge*

*Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989)). Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy." *Sykes v. State of California*, 497 F.2d 197, 200 (9th Cir. 1974).

In this cause of action, Plaintiff claims that "Defendants Santiago, Warden Phillips, Sgt. Salcedo, Bonilla, Rodriguez, Lt. Ervin, Capt. Sherman, S. Rodriguez, Sgt. Herrmann, and Lt. Barrios entered into an agreement to deprive Plaintiff of his constitutional rights by: using excessive force against Plaintiff, filing coordinated false reports to cover up the excessive force, filing a retaliatory RVR against Plaintiff, denying Plaintiff due process in the disciplinary proceedings, and ratifying Santiago's unconstitutional conduct." (ECF No. 71 at 16). However, Plaintiff does not allege any facts indicating that Defendants made an explicit agreement to deprive Plaintiff of his constitutional rights in this way. Plaintiff does not allege that any defendant said anything that indicated there was such an agreement. Moreover, Plaintiff has not alleged that any defendant was aware of the possibility of Santiago's use of force before it occurred.

The Court thus recommends dismissing Plaintiff's Seventh and Eighth causes of action for civil rights conspiracy and failure to prevent conspiracy. *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (Burns' claims against all the defendants for a conspiracy to violate his constitutional rights under section 1983 also fail because they were supported only by conclusory allegations. To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy.").

**h. Bane Civil Rights Act**

Plaintiff's Ninth Cause of Action is for violation of the Tom Bane Civil Rights Act against all defendants.

The Bane Act forbids conduct by any person, "whether or not acting under color of law," who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...." Cal. Civ. Code § 52.1(a). A plaintiff "must show (1) intentional interference or attempted interference with a state or federal constitutional or legal

right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Hearns v. Gonzales*, No. 1:17-CV-00038-AWI-GSA-PC, 2018 WL 1790800, at *1 (E.D. Cal. Apr. 16, 2018) (*quoting Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67 (Cal. Ct. App. 2015)). Moreover, a Bane Act claim cannot proceed where there is no constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018) (describing a constitutional violation as a "predicate" for a Bane Act claim).

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Id.* (*quoting Austin B. v. Escondido Union School Dist.,* 149 Cal.App.4th 860, 883 (Cal. Ct. App. 2007). However, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged," but rather a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." *Rodriguez v. County of Los Angeles,* 891 F.3d 776, 802 (9th Cir. 2018) citing *Reese v. County of Sacramento* 888 F.3d 1030, 1042-1043 (9th Cir. 2018) ("We conclude from these decisions that in excessive force cases, including Eighth Amendment cases, § 52.1 does not require proof of coercion beyond that inherent in the underlying violation.")

Finally, if a plaintiff sufficiently alleges that he was subjected to excessive force in violation of the Eighth Amendment, he necessarily pled sufficient facts to support a claim for violation of his rights under § 52.1. *Rodriguez*, 891 F.3d at 802 ("Because [Plaintiffs] provided evidence sufficient to support a finding that they were subjected to excessive force in violation of the Eighth Amendment, they necessarily provided evidence sufficient to support a finding of a violation of their rights under § 52.1.")

As Plaintiff has sufficiently pled an excessive force claim against defendant Santiago for the purposes of screening, he has also necessarily pled a Bane Act claim against this defendant. *Id.* at 802. Moreover, Plaintiff has alleged that defendant Salcedo failed to intervene in the use of excessive force. As a result, Plaintiff has sufficiently pled a Bane Act claim against defendant Salcedo to proceed past screening.

However, as to the remaining defendants, Plaintiff has not alleged facts that any other

defendant interfered (or attempted to interfere) with Plaintiff's constitutional rights by threat, intimidation or coercion. Plaintiff does not allege that any other defendant used force against him, or failed to intervene in that use of force. Thus, the Court finds that Plaintiff has failed to state a Bane Act claim against any other defendant.

The Court thus recommends that Plaintiff be permitted to proceed on his Sixth Cause of Action for Violation of the Bane Act against defendants Santiago and Salcedo only.

**i. State Law Claims**

Plaintiff then asserts several state law tort claims: Battery (Tenth Cause of Action), Intentional Infliction of Emotional Distress (Eleventh Cause of Action), Defamation (Twelfth Cause of Action).

As an initial matter, the California's Government Claims Act[2] requires that a claim against the State[3] or its employees "relating to a cause of action for death or for injury to person" be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1245 (Cal. 2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. *Bodde*, 32 Cal.4th at 1245; *Mangold*, 67 F.3d at 1477; *Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 627 (9th Cir. 1988). And, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); Cal. Gov't Code § 811.2 (defining "public entity" to include a county or public agency); Cal. Gov't Code § 954.4 (barring suit against public entity without notice of claim); Cal. Gov't Code § 950.2 (barring claim against public employe if claim would be barred against public entity for

---

[2] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal. 4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

[3] "'State' means the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller." Cal. Gov't Code § 900.6.

failure to comply with claims statute). This requirement applies in federal court. *See Clapp v. City and County of San Francisco*, 846 F. App'x 525, 526 (9th Cir. 2021) (affirming dismissal where plaintiff "failed to allege facts sufficient to show that he complied with, or was excused from, the claim presentment requirement of the California Government Claims Act" (citation omitted)).

In his second amended complaint, Plaintiff has alleged he complied with the requirements under the Government Claims act by timely filing his grievance no more than six months following the incidents and subsequently receiving a rejection of that grievance. (ECF No. 71 at 3). The Court will thus proceed to screen Plaintiff's state law tort claims.

**i. Battery**

Plaintiff's second amended complaint brings a claim of battery against defendant Santiago.

Under California civil law, the elements of a battery are: "(1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). 511 F.3d at 855. *accord Piedra v. Dugan,* 123 Cal. App. 4th 1483, 1495 (Cal. Ct. App. 2004).

With these standards in mind, the Court recommends finding that Plaintiff has stated a cognizable claim of battery against defendant Santiago.

**ii. Intentional Infliction of Emotional Distress**

Plaintiff asserts a claim of intentional infliction of emotional distress against all defendants.

"The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1179-80 (E.D. Cal. 2008) (*citing Potter v. Firestone Tire & Rubber Co*., 6 Cal.4th 965, 1001 (1993) & *Delfino v. Agilent Technologies, Inc.*, 145 Cal.App.4th 790, 808 (2006)). Extreme and outrageous conduct is that

which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community," *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982), and "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Christensen v. Superior Ct.,* 54 Cal.3d 868, 905 (1991) (emphasis in original) (citation and internal quotation marks omitted). "The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result." *Id*. at 903. (citation and internal quotation mark omitted). "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Hughes v. Pair,* 46 Cal.4th 1035, 1051 (2009) (citations and internal quotation marks omitted). W

With these standards in mind, Plaintiff has failed to state a cognizable claim under California Law for the intentional infliction of emotional distress. While Plaintiff alleges the conduct was extreme and outrageous, such an allegation does not meet the high standard of conduct which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson,* 32 Cal.3d at 209. Moreover, there are no allegations suggesting that Plaintiff suffered "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Potter*, 6 Cal.4th at 1004 (alteration in original) (citations and internal quotation marks omitted)..

The Court thus recommends dismissing Plaintiff's Eleventh Cause of Action for Intentional Infliction of Emotional Distress against All Defendants.

**iii. Defamation**

Plaintiff's second amended complaint brings a defamation claim against defendants Santiago, Salcedo, Bonilla and Rodriguez.

"Damage to reputation alone is not actionable under § 1983." *Hart v. Parks,* 450 F.3d 1059, 1069 (9th Cir. 2006). However, if a government official's act of defamation results in a plaintiff being deprived of a previously held constitutionally protected right, a plaintiff may be able to state a claim for defamation under § 1983 on the theory that he or she has been deprived of a constitutionally protected right without the procedural guarantees of the Fourteenth Amendment. *see Paul v. Davis*, 424 U.S. 693, 708–09 (1976) (recognizing that a § 1983

defamation case might lie where a government official defames a plaintiff and the official's action "deprived the individual of a right previously held under state law;" "it was the alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards").

To state a claim for § 1983 defamation, a plaintiff must demonstrate (1) that he was stigmatized by a defamatory statement, and (2) that, as a result of the defamatory statement, he was denied of a federally protected interest without due process of law. *Hart,* 450 F.3d at 1070 (quoting *Paul*, 424 U.S. at 701–02). "This is known as the 'stigma-plus' test." *Hart*, 450 F.3d at 1070. The "stigma-plus" test can be satisfied in two ways. The first way is for a plaintiff to "show that the injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right." *Id.* The second way is for a plaintiff to "show that the injury to his reputation *caused* the denial of a federally protected right." *Id.*

Here, Plaintiff fails to allege a defamation claim under § 1983. Plaintiff asserts that by falsely accusing Plaintiff of willfully resisting a peace officer, defendants accused him of a crime, which he states, "constitutes defamation per se under California law." However, Plaintiff does not sufficiently allege that he was stigmatized by a defamatory statement or deprived of any constitutionally protected right as a result of this accusation.

Moreover, as explained above, "False statements, alone, do not violate a prisoner's constitutional rights," *Alverto v. Henderling*, No. C18-1380 BJR-BAT, 2018 WL 7018718, at *1 (W.D. Wash. Oct. 2, 2018), report and recommendation adopted, 2019 WL 174674 (W.D. Wash. Jan. 11, 2019), nor is the filing of a false rules violation report by a prison official against a prisoner a *per se* violation of the prisoner's constitutional rights, *Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), aff'd, 453 F. App'x 751 (9th Cir. 2011). This is because "a prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983." *Muhammad,* 2010 WL 1260425, at *3 (internal citations omitted).

False statements or a false rules violation report, alone, do not violate a prisoner's constitutional rights, and thus, Plaintiff's allegations do not "show that the injury to his reputation was inflicted in connection with the deprivation of a federally protected right" or "that the injury to his reputation *caused* the denial of a federally protected right." *Hart*, 450 F.3d at 1070.

The Court thus recommends dismissing Plaintiff's Twelfth Cause of Action for Defamation.

**j. Vicarious Liability against CDCR**

Finally, Plaintiff's Thirteenth Cause of Action is for Vicarious Liability/Respondeat Superior against Defendant CDCR.

As Plaintiff concedes in his complaint, CDCR is not a proper defendant for Plaintiff's § 1983 claims. As described above, section 1983 applies to "persons" who violate someone's constitutional rights. CDCR is not a person—it is the State of California's Department for Corrections and Rehabilitation. *See Allison v. Cal. Adult Auth.,* 419 F.2d 822, 823 (9th Cir. 1969) (California Adult Authority and San Quentin State Prison not persons within meaning of Civil Rights Act).

California law provides that "[e]xcept as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Cal. Gov't Code § 815(a). "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. Cal. Gov't Code § 815.2(a). Moreover, California Government Code section 844.6(a) renders public entities immune to liability for tortious injuries. California Government Code section 844.6(a) provides:

> (a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for:
>
> (1) An injury proximately caused by any prisoner.
>
> (2) An injury to any prisoner.

Cal. Gov't Code § 844.6(a). "Public entities in California are not liable for tortious injury unless liability is imposed by statute." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1069 (Cal. Ct. App. 2013) (citing Cal. Gov't Code § 815). "Section 844.6, subdivision (a)(2)

establishes the State's immunity to liability for injuries to prisoners." *Id.* at 1070. *Lawson v. Superior Ct.*, 180 Cal. App. 4th 1372, 1383 (2010) ("Although a public entity may be vicariously liable for the acts and omissions of its employees (Gov. Code, § 815.2), that rule does *not* apply in the case of injuries to prisoners.").

Plaintiff's allegations fail to establish defendant CDCR was vicariously liable for his injuries resulting from his excessive force claim. Plaintiff's claims are based on an alleged injury to a prisoner suffered resulting from force used against that resulted in injury.

As such, the Court shall recommend dismissal of Plaintiff's vicarious liability claim against defendant CDCR.

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1. The following claims should proceed past screening[4]: (1) Eighth Amendment excessive force against defendant Santiago; (2) Eighth Amendment failure to intervene against defendant Salcedo; (3) Fourteenth Amendment due process violation against defendants Lt. Ervin, Sherman, Rodriguez, Hermann, and Barrios; (4) violation of the Tom Bane Civil Rights act against defendants Santiago and Salcedo; and (5) California state law Battery claim against defendant Santiago.
2. The following claims be dismissed: (1) Eighth Amendment failure to train, supervise, and discipline against supervisory defendants; (2) Fabrication of evidence/filing false reports against defendants Santiago, Salcedo, Bonilla, and Rodriguez; (3) First Amendment retaliation against defendants Santiago and Lt. Ervin; (4) Civil rights conspiracy and failure to prevent conspiracy against all defendants; (5) California state law claim of intentional infliction of emotional distress against all defendants; (6) California state law claim of defamation against defendants Santiago, Salcedo, Bonilla, and Rodriguez; and (7) vicarious liability against defendant CDCR.

---

[4] Plaintiff may file a statement with the Court representing that he agrees to proceed only with the claims the Court found should proceed past screening and voluntarily dismiss the remaining claims and defendants. If Plaintiff does so, the case will proceed with these claims without further order from the district judge.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections[5] with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 18, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE